## STATE OF IOWA v. ZENAS W. JOHN, Appellant.

**Perjury:** INDICTMENT: SUFFICIENCY. An indictment need not charge
1 the precise date on which the crime was committed, but is sufficient if it states the time as prior to the finding of the indictment, except where time is a material ingredient of the offense.

**Additional jurors.** The court is authorized by Code, section 347,
2 to order additional jurors to be drawn from the petit jury box and summoned for the trial of a particular cause.

**Jurors:** CHALLENGE FOR CAUSE: DISQUALIFICATION. A juror who has
3 a fixed and unqualified opinion as to the guilt of the defendant is disqualified to act, even though he is induced to state, that the opinion entertained by him would not prevent his giving defendant a fair trial under the evidence and instructions of the court. Evidence considered and held to show disqualification.

*Appeal from Muscatine District Court.*— HON. JAMES W. BOLLINGER, Judge.

THURSDAY, MAY 12, 1904.

THE defendant appeals from a judgment convicting him of the crime of perjury.—*Reversed.*

*E. M. Warner, W. A. Spurrier* and *John E. McIntosh,* for appellant.

*C. W. Mullan,* Attorney-General, for the State.

LADD, J.— The indictment is criticised as being defective, in that the precise date of the offense is not stated. No doubt, there is some confusion in the decisions with re-

1. INDICTMENT: sufficiency. spect to the degree of definiteness required in charging perjury. But section 5285 of the Code provides that "the precise time at which the offense was committed need not be stated in the indictment, but it is sufficient, if it allege that it was committed at any time prior to the time of finding thereof, except where time is a material ingredient of the offense." Section 5289 declares that "the indictment is sufficient if it can be understood therefrom * * * that the offense was committed prior to the time of the finding of the indictment." The only fair inference from these statutes is that the allegation need be no more specific than the proof. An allegation that the act was committed on or about a named date was upheld in *State v. Perry,* 117 Iowa, 462. In *State v. Freeman,* 8 Iowa, 428, the indictment alleged the date as May 12, 1858, and in the videlicit as October 12th of the same year, and the court said: "The time of the commission of the offense was immaterial, and need not be proved as laid. Being alleged under a videlicit, it was nugatory and not traversable, and, if repugnant to the premises, did not vitiate the indictment, but the videlicit itself may be rejected as surplusage. It would be otherwise if the precise time were the very point and gist of the cause. In such case the time alleged by the videlicit is conclusive and traversable, and shall be intended to be the true time, and no other; and, if impossible or repugnant to the premises, it will vitiate the indictment." Starkie's Crim-

inal Pleading, 277, 278. In *State v. Brooks,* 85 Iowa, 366, an impossible date was rejected as surplusage. The indictment in the instant case charges that " Zenas W. John on the 7th day of April, 1900, in the county aforesaid, and at a regular term of the district court of Iowa in and for Muscatine county, held in said county, and on or about March 1, 1900, there was tried to and before the Hon. P. B. Wolfe, a judge of the Seventh Judicial District of Iowa, and a jury, a certain cause and action, wherein the State of Iowa was plaintiff and Zenas W. John was the defendant, charged with murder, and upon the trial of issues joined in said cause between the State of Iowa, plaintiff, and said Zenas W. John, defendant, it became and was material to the issues and proceedings in said cause had, whether or not said Zenas W. John was present on October 1, 1899, at the lunch-room of Paxton Wright, in West Liberty, Iowa, at a time when a fight occurred between one Ross Wiley and Walter W. Boot, at said place, whether or not the said John fired a shot in said lunch-room on that evening, and whether or not the said John pointed and discharged his revolver at said Boot during or after the occurrence of said fight on that evening." Then follow the assignments of perjury with respect to these material matters. Certainly this charges the offense to have been committed before the indictment was found by the grand jury, and must be held sufficient, regardless of any possible ambiguity as to date, unless section 5289 of the Code, quoted above, is to be ignored. Doubtless that statute was enacted to obviate the rule requiring a definite date to be asserted as in the many decisions cited by appellant. However, the first date named, " on the 7th day of April, 1900," appears to have no connection with the other language of the instrument. Nothing is alleged to have been done by John at that time, nor is the court at which he was on trial said then to have been in session. This date may be rejected as surplusage, and leave the indictment as definite in time as that approved in *State v. Perry, supra.*

II.   The cause was set down for trial April 25, 1901.
A panel of jurors had been serving during the term, and,
on the day before the trial began, the court ordered the
names of twenty-five persons, in addition to the
regular panel, to be drawn from the petit jury
box and summoned for the trial of this case.   This was au-
thorized by section 347 of the Code, which provides " that
the court or judge thereof, either before or during the term,
may order as many additional jurors drawn for the term,
or for the trial of any particular case as may be deemed nec-
essary."   When this is done, the jurors summoned become a
part of the panel for the term or the particular case, as the
order directs, and not until it is exhausted should talesmen
be called as directed in section 349 of the Code.   Manifestly
this authority is conferred to the end of more certainly se-
curing a fair and unbiased jury, and by its exercise the use
of talesmen may be entirely avoided.   Whether additional
jurors shall be summoned from the body of the county or
drawn from the talesmen box, is a matter for the court,
in the exercise of sound discretion, to determine in each par-
ticular case.

*2. ADDITIONAL JURORS.*

III.   The perjury charged was alleged to have been
committed on the trial of John for murder, in that he falsely
testified that he was not present at the lunch-room of one
Wright, in West Liberty, October 1, 1899, at
the time of a fight between Ross Wiley and
Walter W. Boot at said time and place, and
did not point and discharge his revolver at said Boot after or
during said fight.   In the selection of a jury, the defendant
exercised all the peremptory challenges to which he was en-
titled, and complains of the action of the court in overruling
several challenges for cause.   Hubert Patten, in response to
inquiries on *voir dire,* answered that he had been acquainted
with Boot in his lifetime, and had boarded with him some
weeks several years previous; had known his parents and
family, and had talked with his kinfolks in regard to the

*3. JURORS: chal-lenge for cause; dis-qualification.*

circumstances attending his death; had read the reports of the trial, including the printed reports of the testimony of all the witnesses in the case; that he had formed and expressed an opinion as to "whether Mr. John did or did not do the shooting which killed Walter Boot"; that he had that opinion still, and it would take strong evidence to remove it. To a question he answered: "It will take pretty strong evidence to remove my opinion. I think, if the evidence were such as would indicate or show conclusively or reasonably that the defendant was not guilty, I could lay aside that prejudice and go according to the evidence. By the Court: "Q. Now Mr. Patten, this opinion you say you have — is that an opinion as to the guilt or innocence of the defendant? A. Yes, sir. Q. In the murder case or perjury case? A. In the murder case. I know nothing about this case at all. (Challenge overruled. Defendant excepts.)" Cross-examination: "Q. You answered me that you had an opinion as to whether the defendant did or did not fire the shot that killed Walter Boot? A. Yes, sir. Q. You have that opinion? A. Yes, sir. Q. You have an opinion either that he did or did not do the deed? A. Yes, sir. Q. But you have no opinion as to whether he did or did not tell the truth when he gave his version of it? A. No. (Defendant challenges the juror Hubert Patten for the reason that his answers disclose he has a fixed and unqualified opinion as to the innocence or guilt of the defendant in the former trial, and for the reason that his opinion upon that question, of necessity, must determine his opinion upon the question at issue in this case. (Challenge overruled. Defendant excepts.)"

J. L. Knopp answered that he had read the evidence introduced on the former trial, and talked about it; that he had an opinion as to "whether the defendant did or did not shoot Walter Boot," and also as to "whether he did or did not tell the truth when he testified that he did not fire the shot that ended Walter Boot's life"; that the evidence would have to be strong and clear to overcome his opinion;

By the Court: "Q. The opinion that you have that you speak of as already formed — is that as to the murder case or the perjury case? A. Well, the perjury case. Q. Have you ever formed or expressed any opinion whatever as to the perjury case? A. No; only this: That one follows the other. Q. What do you mean by that? A. Well, he is either guilty or innocent of both. Q. Why do you say that one follows the other — he is either guilty or innocent of both? A. If he is innocent of the other, why, he is innocent of this. Q. Is your opinion, then, an opinion in this case depending wholly upon the opinion of his guilt or innocence in the other case? A. Yes, sir. Q. Do you know what he testified to in the other case? A. I do not. Q. Don't you think that you could lay aside any opinion you may have formed heretofore, and decide this perjury case solely upon the testimony introduced in this case, and the charge of the court? A. Of course, whatever evidence would come up here would be considered. Q. You know it is your duty to decide a case only on the evidence introduced? A. Yes, sir. Q. And it is wrong for a juror to take into consideration, in forming his verdict, any opinion he had heretofore? A. Yes. Q. Can you give that kind of a verdict in this case, regardless of any opinion you may have now? A. Yes, sir. Q. You think you could? A. Yes, sir; if I would remain here and try this case, I would consider the evidence brought in. Q. And the charge of the court? A. Yes, sir. Q. And then you would render a fair and true verdict on that evidence and that charge of the court, without regard to an opinion that you had heretofore of anything? A. I would." Recross-examination: By Mr. Warner. "Q. You told me you had an opinion that would require evidence to overcome? A. Yes, sir. Q. Have you an opinion now as to whether he did or did not shoot Walter Boot? A. Yes; I have. Q. Does it follow from that, that you have an opinion as to whether he did or did not tell the truth when he swore that he did not shoot

Walter Boot? A. Yes, sir. Q. Is that the question upon which you have an opinion that would require strong evidence to remove? A. Yes, sir. Q. And that opinion would be in your mind if you sat here as a juror? A. It would be upon my mind until removed by evidence." Re-examination: By the Court: "Q. Then you didn't mean what you said to me awhile ago? A. Well, I got kind of confused. Q. Were you confused in your answers to me or to Mr. Warner? A. What I say is this: It would require evidence to remove — to change my opinion. Q. The question is, can you try this case without regard to the opinion, on the evidence and the charge of the court? A. Yes, sir. Q. I will ask you one more. You think you understood my questions, do you? A. Yes; as I said to Mr. Warner before that, I think I ought not to sit on this case. Q. That is not the question. It is for me to say whether you ought to sit in this case. If you were to decide that, you would have been excused a long while ago. Now, the question is this: Do you think you could give a fair verdict in this case, solely on the evidence and charge of the court, laying aside any opinion that you may have had heretofore? A. Well, I could. Q. You could? A. I could." The challenge was overruled.

The examination of Sam Lentz developed the fact that he entertained an unqualified opinion as to whether defendant shot Boot, and, to the question as to whether he understood that defendant was " charged in this case with swearing falsely when he said he did not shoot Walter Boot," answered in the affirmative.

The court, in overruling these challenges, seems to have acted on the theory that an unqualified opinion as to whether defendant had shot Boot did not disqualify the juror to serve in the perjury case. But that was the very issue being tried. The defendant had sworn that he had not shot him, and this testimony was alleged to have been false, for that he in fact shot him at the time and place stated. This was precisely

what the jurors understood, for Patten declared that he had
both formed and expressed an opinion as to " whether Mr.
John' did or did not do the shooting that killed Boot."
Knopp was even more definite, in saying his opinion was as
to " whether the defendant did or did not tell the truth,
when he testified that he did not fire the shot that took
Walter Boot's life," and insisted defendant must be either
innocent or guilty of both the charges of murder and perjury.
Lentz answers disclosed the same state of facts.

It is idle, in the face of this record, to say that the court
could properly have assumed that some other shooting than
that averred might have been understood as having occa-
sioned the death of Boot, for which John was tried. The
attorneys and jurors knew better, and the examination on
*voir dire* informed the court. The case differs from those
cited by the State in which an opinion as to some phase of
a case not in dispute, or as to who killed deceased, where
such killing was admitted, was held not to disqualify. See
*State v. Bryan,* 40 Iowa, 380; *State v. Thompson,* 9 Iowa,
189; *State v. Lawrence,* 38 Iowa, 54. Here the opinion
involved the very point at issue on the trial. What has been
said disposes of the claim that the wording of the challenge
was not sufficiently definite. That these jurors had fixed
service as jurors, there can be no doubt. They insisted upon
and unqualified opinions, such as disqualified them from
their opinions as persistently as due courtesy to the court
would permit, and finally yielded a reluctant concession
that they could deal with defendant justly. An opinion
would not be entertained, were it not thought correct, and
very naturally its possessor deems it no impediment to the
fair investigation of truth. This was the situation of these
jurors. The court was right in asserting that the juror
ought not to decide whether he was unfit to serve, and yet
seems to have relied on each juror's admission that he could
decide the case fairly, notwithstanding his repeated state-
ments that he entertained a fixed opinion as to whether the

accused had shot Boot. Unless the statute declaring an unqualified opinion ground of challenge for cause is to be repealed by judicial construction, these challenges ought to have been sustained. As said in *State v. Crofford,* 121 Iowa, 395: "A person accused of crime should bear no greater burden than is created by the evidence produced against him on the trial, and the juror who passes upon that evidence should come to its consideration unhampered and unembarrassed by any ready formed convictions as to the vital fact or facts in controversy." Because of the error in these rulings, we are constrained to award a new trial. The contention that one of the assignments of perjury is immaterial is without merit. Other errors assigned will not be likely to arise on another trial.— REVERSED and RE-MANDED.