STATE of Iowa, Appellee,

v.

Will DIXON, Appellant.

No. 57995.

Supreme Court of Iowa.

April 14, 1976.

Charles A. Coppola, of Newport & Buzzell, Davenport, for appellant.

Richard C. Turner, Atty. Gen., William D. Scherle, Asst. Atty. Gen., and Edward N. Wehr, County Atty., for appellee.

MOORE, Chief Justice.

Defendant Will Dixon appeals his convictions for armed robberies of nine tavern patrons. He asserts the State failed to establish good cause justifying an investigatory stop of his automobile and that the police exceeded the scope of search constitutionally permissible incident to an investigatory stop and arrest. We affirm.

Approximately 1:30 a. m., Friday, October 11, 1974, two Davenport police officers were cruising on West Locust Street when they observed a black and white Cadillac automobile containing three or four black males at the intersection of Locust and Madison. The vehicle was departing from Madison which the officers described as a north-south one block long very narrow residential street in an entirely white neighborhood. The officers proceeded west on Locust. Within one minute the officers received a radio dispatch that an armed robbery had just taken place at the Hi and Dry Tavern which was approximately eight blocks from their then location. They were aware the Cadillac was traveling in a direction away from the reported robbery. The dispatch advised them several male black subjects had held up the tavern at gun point and had escaped with wallets and purses belonging to patrons of that establishment. Believing they may have observed the robbers seconds earlier, the officers turned their vehicle around and pursued defendant's vehicle. After stopping the Cadillac, its driver Dixon and other occupants were ordered to get out of the car. The subjects acted fidgety and did not respond appropriately to the officers' orders to remain where they were. Each was patted down to determine if any of them had guns. None were found. One of the policemen found two wallets in one of the passenger's pockets. Upon removing the wallets and further radio dispatch it was determined an identification card found in one of the removed wallets belonged to a patron of the tavern. The subjects were immediately placed under arrest and upon further investigation of the automobile, the officers observed a purse in plain view on the floor of the back seat area. It was intertwined with another purse and contained numerous billfolds later identified as belonging to victims of the tavern robbery. Two revolvers and another billfold were found under the seats.

Prior to trial defendant's motion to suppress the evidence obtained during the investigatory stop and search was heard and

overruled. Over defendant's objections the evidence thus obtained was admitted at trial. Defendant was found guilty of each of the nine counts of robbery with aggravation in violation of Code section 711.2, as charged.

I. Defendant first asserts the officers acted improperly "upon nothing more than speculation, conjecture and surmise in stopping his vehicle." He relies on our recent holding in *State v. Cooley,* Iowa, 229 N.W.2d 755 where we found the evidence failed to establish good cause for an investigatory stop.

In *Cooley* we cite and analyze the polestar case of *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) and many cases from other jurisdictions, both federal and state, dealing with the legal propositions of good cause for an investigatory stop and admissibility of evidence obtained thereafter. Another careful and thorough analysis and discussion of the case authority on these legal propositions is found in *State v. Donnell,* Iowa, 239 N.W.2d 575, an opinion which we filed March 17, 1976. Repetition of what we say and hold in *Cooley* and *Donnell* is unnecessary. They amply establish the law applicable to defendant-appellant's several contentions. See also Annot., "Warrantless Search of Automobile," 26 L.Ed.2d 893.

The law is now well established that an investigatory stop of a motor vehicle is constitutionally permissible only if the stopping officer has specific and articulable cause to reasonably believe criminal activity is afoot. Circumstances evoking mere suspicion or curiosity will not suffice.

Obviously and as we say in *Cooley,* "[W]e must objectively determine whether stopping of said vehicle * * * was reasonable under the circumstances." 229 N.W.2d at 759.

Without reiterating the facts in the record before us we are convinced the police officers had specific and articulable cause to reasonably believe criminal activity was afoot. Stopping of defendant's vehicle was good police work and reasonable under the circumstances. Under similar facts investigatory stops were upheld in *United States v. Harflinger,* 436 F.2d 928 (8 Cir. 1970) and *Carpenter v. Sigler,* 419 F.2d 169 (8 Cir. 1969).

II. Defendant next asserts that even if the stop was valid, the officers exceeded the scope of constitutionally permissible search and seizure by removing the wallets from the passenger's (Tony Truss) pocket prior to the moment all the occupants of defendant's car were placed under formal arrest.

Although the State has failed to raise defendant's standing to challenge the search of a third person, we must nevertheless consider whether defendant should be allowed to raise possible violations of another person's constitutional rights. That question was settled in *State v. Osborn,* Iowa, 200 N.W.2d 798, where we said that in order for a litigant to challenge a search as violative of his Fourth Amendment constitutional rights to be free from unreasonable searches and seizures, he must first establish his standing to do so and may invoke:

"* * * only the violation of his own constitutional rights and not the constitutional rights of a third person. Only the 'victim of the unlawful search and seizure' can complain of an unreasonable search. *Goldstein v. United States,* 316 U.S. 114, 120, 62 S.Ct. 1000, 1003, 86 L.Ed. 1312." *Osborn,* supra, 200 N.W.2d at 803.

In *Osborn,* supra, we continued by citing *Jones v. United States,* 362 U.S. 257, 260–261, 80 S.Ct. 725, 730–731, 4 L.Ed.2d 697, 702–703:

"'In order to qualify as a "person aggrieved by an unlawful search and seizure" one must have been a victim of a search or seizure, one against whom the search was directed, as distinguished from one who claims prejudice only through the use of evidence gathered as a consequence of a search or seizure directed at someone else.' *Id.* at 261, 80 S.Ct. at 731, 4 L.Ed.2d at 702. See also *State v. Shank,* 191 N.W.2d 703, 705 (Iowa

1971)." *Osborn,* supra, 200 N.W.2d at 803.

On the basis of the above cited authorities, it is clear defendant has no standing to challenge the search of Tony Truss' person.

■ III. Defendant-appellant's contention the purse and other items which were seen from outside defendant's vehicle were illegally seized is readily put to rest in *State v. Cooley,* supra, where at page 760, 229 N.W.2d, we state:

"If the officers were reasonably justified in effecting a stop of the vehicle then they were in a place they had a right to be and contraband readily observable in the car could be lawfully seized and admitted in evidence. (Citations)."

IV. Finally defendant-appellant urges us to reverse his convictions on the ground seizure of the purse and guns in the search of his automobile violated his Fourth Amendment right against unreasonable search and seizure. This assignment is untenable.

■ We have consistently pointed out and held that while a warrant is generally necessary to search a mobile vehicle, officers may search without a warrant when exigent circumstances and probable cause exists. An officer may search an automobile if he has reasonable or probable cause for believing it contains items which offend against the law. See *State v. McReynolds,* Iowa, 195 N.W.2d 102, 105; *State v. Hollingshead,* Iowa, 191 N.W.2d 680, 681, 682; *State v. Baych,* 169 N.W.2d 578, 581, and citations in each. See also Annot., "Warrantless search of Automobile," 26 L.Ed.2d 893, sections 4 and 5. The officers had reasonable probable cause to believe additional loot and the guns used in the robberies were in defendant's automobile.

We find no reversible error.

AFFIRMED.

LeGRAND, REES, UHLENHOPP, REYNOLDSON and HARRIS, JJ., concur.

McCORMICK, MASON and RAWLINGS, JJ., concur specially.

McCORMICK, Justice (concurring specially).

The controlling difference, in my view, between this case and *State v. Donnell,* 239 N.W.2d 575 (Iowa 1976), where I joined the dissent, *State v. Cooley,* 229 N.W.2d 755 (Iowa 1975), and *United States v. Nicholas,* 448 F.2d 622 (8 Cir. 1971), is the fact that the officers here had been informed of a specific crime which had just occurred in the vicinity and which they were investigating at the time they stopped the vehicle.

The following facts would justify the investigative stop here:

(1) the officers were investigating a specific crime of armed robbery which had just been reported to them;

(2) they had been told the offense had just occurred about eight blocks away;

(3) they had been told the robbers were several black males;

(4) within 30 to 60 seconds before receiving the report they had observed the vehicle defendant was driving, occupied by several black males, in a little-traveled street, travelling in a direction away from the robbery scene;

(5) it was about 1:30 a. m.; and,

(6) the vehicle was seen in an area that for several blocks was an exclusively white residential area.

These specific and articulable facts which led to the stopping of the vehicle were sufficient to warrant a man of reasonable caution to believe the action was appropriate. The circumstances were reasonably suggestive of possible involvement of the vehicle occupants in criminal conduct. *Terry v. Ohio,* 392 U.S. 1, 21–22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889, 906 (1968). It follows that the officers were justified in making a limited self-protective "patdown" search of the vehicle occupants for weapons.

I agree with the majority that defendant lacks standing to challenge the seizure of the wallets from Truss during the patdown search. Once the officers learned one of the wallets taken from Truss had been sto-

len in the tavern robbery, they clearly had probable cause to place all of the vehicle occupants under arrest.

After the arrest of the vehicle occupants, the officers had probable cause to conduct a warrantless search of the vehicle under principles discussed in Division IV of the majority opinion. See *Texas v. White*, 423 U.S. 67, 96 S.Ct. 304, 46 L.Ed.2d 209 (1975). Therefore the search of the vehicle was reasonable. I would not reach the "plain view" issue.

On this basis, I concur in the result.

MASON and RAWLINGS, JJ., join in this special concurrence.