**STATE of Iowa, Appellee,**

v.

**Dale SANDERS, Donald Johnson, and Michael Ingham, Appellants.**

**No. 65469.**

Supreme Court of Iowa.

Nov. 25, 1981.

James Q. Blomgren of Williams, Clements, Blomgren & Pothoven, Oskaloosa, for Michael Ingham.

Michael P. Brice of Michael P. Brice Law Office, Oskaloosa, for Dale Sanders.

David D. Dixon of Heslinga & Heslinga, Oskaloosa, for Donald Johnson.

Thomas J. Miller, Atty. Gen., Roxann M. Ryan, Asst. Atty. Gen., and Greg A. Life, Mahaska County Atty., for appellee.

Considered by REYNOLDSON, C. J., and LeGRAND, UHLENHOPP, McCORMICK, and SCHULTZ, JJ.

LeGRAND, Justice.

A jury convicted these three defendants of robbery in the first degree, committed in violation of section 711.2, The Code 1979, and false imprisonment, committed in violation of section 710.7, The Code 1979. Each was sentenced to serve concurrent terms of not more than twenty-five years on the robbery conviction and one year on the false imprisonment charge. All three defendants appeal, and we affirm.

At approximately 12:40 a. m. on February 1, 1980, Anna Noel, assistant manager of the Pizza Hut in Oskaloosa, Iowa, closed the restaurant and went to her car with the day's receipts. After she got into her automobile, two men approached. At least one of the men had a handgun. The two men entered her car, ordering her to move over to the passenger side of the front seat. With Ms. Noel as a passenger, one of them drove her vehicle from the Pizza Hut parking lot to a nearby point where they met another car in an obviously prearranged rendevouz. They got out of her car and entered the get-away car, taking the Pizza Hut receipts with them. Ms. Noel drove her car back toward Oskaloosa. On the way, she flagged down a passing police car. She reported the robbery to the police officer manning the vehicle, who immediately put out a radio alert. Additional facts will be recited as we consider the issues urged by defendants as grounds for reversal. They say the trial court erred in (1) denying their motion to suppress evidence; (2) refusing to submit being an accessory after the fact as an included offense; (3) admitting identification testimony; (4) calling additional jurors to supplement the existing jury panel; (5) permitting a witness to testify beyond the scope of the minutes of testimony; and (6) refusing to permit defendants to call an expert witness.

I. *Motion to Suppress Evidence.*

On the night of the robbery, members of the Oskaloosa Police Department were maintaining surveillance over an area in the east end of Oskaloosa where there had been a rash of burglaries. They observed a red four-door Ford parked in a deserted spot in a parking lot near the Pizza Hut. This later turned out to be the get-away car used by defendants after the robbery.

The police officers saw the red Ford leave the parking lot with its lights out. One of the officers attempted to follow the vehicle but lost sight of it. About the same time, another police officer, Edward L. Morrison, who was stopped east of the Pizza Hut, observed a green Chevrolet Impala driving at a "speed greater than it should." He noted its license number. This car was later identified as belonging to the victim, Anna Noel. The green Impala was followed by the red Ford which had been under surveillance. Officer Morrison attempted to follow these cars but they got away. A short time later, Officer Morrison was flagged down by Ms. Noel and informed of the Pizza Hut robbery. He put a bulletin of the robbery on his car radio, alerting other officers in the area to be on the lookout for two or three suspects, presumably armed, in an "older model gray four-door car." This is how Ms. Noel described the car. The officer told Ms. Noel to return to the Pizza Hut and he, too, went there.

When Officer Morrison arrived at the Pizza Hut, he noted for the first time that Ms. Noel's car was the green Impala he had earlier seen being driven at a high rate of speed. He then related to the other officers who had gathered there that the vehicle he

had seen following Ms. Noel's car was not gray; it was the red Ford parked earlier near the Pizza Hut. Based on this information, a new bulletin was issued over the police radio, describing the suspects' car as a red four-door Ford occupied by three or four persons, some of whom were armed.

Shortly before the corrected radio bulletin was broadcast, two police officers from nearby Eddyville observed a red four-door Ford disabled on a highway a few miles south of Oskaloosa. Upon investigation, they spoke to defendant Sanders, one of the occupants, who said they had run out of gas. At that time there was no reason for these officers to connect this car with the Pizza Hut robbery. They offered to get some gas for the vehicle and were on this errand when they heard the revised radio report regarding a red Ford which fitted the description of the car they had just left.

The Eddyville police officers contacted the Oskaloosa Police Department, advising them of this fact, and then returned to the disabled vehicle. Defendant Sanders got out of the car and walked back to the police car, just as he had done earlier. This time the officers ordered the other two defendants, Johnson and Ingham, out of the car. All three were searched. When the officers found a knife on Sanders and large rolls of money on both Sanders and Ingham, the men were arrested and handcuffed. The officers then conducted a warrantless search of the interior of the car, which produced several rolls of coins and a loaded pistol. After the vehicle was towed to a garage in Oskaloosa, an inventory search disclosed another pistol under the dash board of the auto. Defendants filed a motion to suppress this evidence as being the fruit of an illegal search and seizure in violation of the fourth amendment to the Federal constitution and § 8, Art. I of the Iowa Constitution.

In overruling defendants' motion to suppress, the trial court found that there were "sufficient grounds for the Eddyville officers to arrest the defendants and conduct a 'pat-down' search incident to the lawful arrest." The trial court reasoned that proba-ble cause existed because the arresting officers were aware of the following:

1. Within the hour there had been an armed robbery in nearby Oskaloosa.
2. The get-away car was a dirty four-door red Ford.
3. The get-away car had three or four occupants, two of whom were believed to be armed.
4. It was early in the morning.
5. Defendants' car was a dirty four-door red Ford.

The trial court relied heavily on *State v. Dixon*, 241 N.W.2d 21 (Iowa 1976). *Dixon* involved the stop and search of a vehicle after police officers had received a radio report of a robbery in the vicinity.

We consider first whether the officers made a valid arrest based on probable cause to believe defendants were involved in criminal conduct. *State v. Dixon*, 241 N.W.2d 21, 23; *accord, State v. Shane*, 255 N.W.2d 324, 326 (Iowa 1977). In *Shane*, we approved the following quote from *Draper v. United States*, 358 U.S. 307, 313, 79 S.Ct. 329, 333, 3 L.Ed.2d 327, 332:

> "In dealing with probable cause * * * as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. * * * Probable cause exists where 'the facts and circumstances within their [the arresting officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed.' * * * "

255 N.W.2d at 326.

In the case now before us, the arresting officers came upon a car answering the description of one which had just been involved as the get-away car in a nearby armed robbery. Like the get-away car, this one was occupied by more than one man (although the officers did not know how many), and it was near the place where Ms.

Noel had been released by her abductors. The case is almost identical to *State v. Dixon* as to the circumstances justifying an arrest. We agree with the trial court that the officers had probable cause to arrest defendants.

■ Once the legality of the arrest is established, the officers were justified in subjecting defendants to a search of their persons. *United States v. Robinson*, 414 U.S. 218, 235, 94 S.Ct. 467, 477, 38 L.Ed.2d 427, 440–41 (1973). *See Dixon, supra*, at page 25 (McCormick, J., concurring specially). The fact that the search may have been prior to defendants' formal arrest is not important. The search and the arrest were all part of one continuous police action. In *State v. Johnson*, 232 N.W.2d 477, 479 (Iowa 1975), we said:

> [W]e hold the entry was legal under the circumstances presented by this record whether the arrest was made when defendant first appeared at the door of his home or later within the house itself. We do not deem the few intervening minutes to be of material significance. Rather, we consider the events beginning with the demand that defendant surrender and terminating when he was taken into custody to be a continuing procedure which, taken in its entirety, constituted a valid arrest. Although defendant's liberty was restricted as soon as he answered the officer's call and the arrest might be considered complete then, such questions are not determined with stop-watch precision. (Citations omitted).

Neither will we apply a stop-watch in this situation.

The search of the car presents a different problem necessitating a consideration of the so-called "automobile exception" to general rules of search and seizure. We most recently discussed this in *State v. Holderness*, 301 N.W.2d 733 (Iowa 1981).

Ordinarily a search and a resulting seizure of private property "must be both reasonable and performed pursuant to a properly executed warrant." *Id.* at 736. One of the "jealously and carefully drawn" exceptions to this general rule is the one relating to the search of automobiles. *Id.* Because of a car's mobility, the ease with which incriminating evidence might be secreted or destroyed, and the necessity to remove weapons from the arrestee's access, warrantless searches of automobiles have long been recognized as valid if there existed both probable cause to arrest and exigent circumstances *making obtaining a warrant impossible or impractical. Holderness*, 301 N.W.2d at 736–37.

This rule has led to insoluble problems in its practical application as law enforcement officers made on-the-spot decisions under myriad conditions upon which courts themselves differ sharply. The need for a more workable solution has long been recognized, and the question was dealt with forthrightly in the recent case of *New York v. Belton*, — U.S. —, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), where the Supreme Court adopted a new standard for the search of automobiles incident to a lawful arrest.

Decrying the difficulties which beset law enforcement officers in attempting to decide when exigent circumstances exist, the Court pointed out that neither the individual who is charged nor society, represented by the police, is well served by continued uncertainty, on the one hand, as to the extent of constitutional protection or, on the other, the scope of investigative authority. *Belton*, — U.S. at —, 101 S.Ct. at 2864, 69 L.Ed.2d at 774. Such a decision, which police officers should not be compelled to make, requires a delicate balancing of the individual's right to privacy under the fourteenth amendment and society's right to protection from criminal activity.

Thus the Supreme Court undertook the task of fashioning a rule which would be both fair and practical. In doing so the *Belton* Court stated it was not retreating from the principles established in *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969) (no police search absent approval of a neutral magistrate). While retaining the basic standards of *Chimel*, the court searched for a "straight forward" rule which would be "easy to apply" in vehicle searches comparable to the one adopted in

*United States v. Robinson,* 414 U.S. 218, 235, 94 S.Ct. 467, 477, 38 L.Ed.2d 427, 440–41 (1973), authorizing a full search of the person in cases of lawful custodial arrest. This purpose is clear as shown by this quotation from *Belton*:

> When a person cannot know how a court will apply a settled principle to a recurring factual situation, that person cannot know the scope of his constitutional protection, nor can a policeman know the scope of his authority.... Accordingly, we hold that when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile.
>
> It follows from this conclusion that the police may also examine the contents of any containers found within the passenger compartment, for if the passenger compartment is within reach of the arrestee, so also will containers in it be within his reach. (Citations omitted). Such a container may, of course, be searched whether it is open or closed, since the justification for the search is not that the arrestee has no privacy interest in the container, but that the lawful custodial arrest justifies the infringement of any privacy interest the arrestee may have.

—— U.S. at ——, 101 S.Ct. at 2864, 69 L.Ed.2d at 774–75.

■ Defendants' objections to the search and seizure are based on both the federal and state constitutional protections. We can, if we choose, impose stricter standards in applying our own constitutional provisions than the United States Supreme Court did in *Belton*. However, we believe *Belton* strikes a reasonably fair balance between the rights of the individual and those of society. We adopt it now as our rule. We thus hold the search of the automobile at the time of defendants' arrest was valid and the evidence seized was admissible at their trial. The later search of the car after it was impounded was also valid under the authority of *State v. Holderness,* 301 N.W.2d at 737.

Our ruling applies, of course, only if there is probable cause to make an arrest. Like *Belton,* our decision is limited to a search of the passenger compartment of the car, not the trunk, and extends to any container found there. *See Government of the Virgin Islands v. Abiff Rasool,* 657 F.2d 582, 590 (3d Cir. 1981) (applying *Belton* rule and concluding warrantless search of brown paper bag in back seat of car was valid). This case does not involve an inventory search of an impounded vehicle and we do not deal with that situation.

II. *Instruction on Accessory After the Fact.*

This issue applies only to defendants Sanders and Johnson. Defendants were charged with robbery and kidnapping. They were convicted of robbery as charged and false imprisonment. False imprisonment was submitted as an included offense of kidnapping. Sanders and Johnson claim error because the trial court refused to also submit the crime of being an accessory after the fact as an included offense of the principal crimes charged.

■ Being an accessory after the fact is a separate crime defined in section 703.3(1), The Code. We have held it is not an included offense of the crime of robbery. *State v. Sanders,* 280 N.W.2d 375, 377 (Iowa 1979). We now say the crime of being an accessory after the fact is not an included offense of the crime of kidnapping as defined in sections 710.1–.4, The Code. Kidnapping requires a specific intent to accomplish one or more of the alternatives listed in the statute. The only intent necessary to render one guilty of violating section 703.3(1) is the "intent to prevent the apprehension of the accused person."

■ In *Sanders,* we explained the two-prong test for determining if one offense is included within another. One of these is legal, the other factual. As in *Sanders,* this case fails to pass the legal test because the elements of the two are totally dissimilar on the vital matter of intent. 280 N.W.2d at 377. Thus, the trial court was correct in

refusing to submit the requested instruction.

## III. *Identification Testimony.*

The identification issue applies only to defendant Ingham. Shortly after defendants' arrest and not long after the robbery itself, Ms. Noel was escorted to the county jail to see if she could identify any of these defendants who were being held as suspects. She walked through a room where a number of men were seated around a table. Some were deputies in uniform. Others were deputies not in uniform. The three defendants were also there. Ms. Noel unequivocally identified Ingham as one of the robbers. Ingham argues this procedure was impermissibly suggestive. A motion to suppress her identification evidence was overruled.

■ We recently discussed the principles governing identification testimony in *State v. Mark*, 286 N.W.2d 396 (Iowa 1979). We consider, first, if the identification procedure is "impermissibly suggestive." If it is, we next decide if it gave rise to a "very substantial likelihood of irreparable misidentification." *Id.* at 403–04. *Mark* also lists five criteria to be evaluated in assessing identification testimony. *Id.* at 405.

■ Ms. Noel testified that Ingham, who had worn a ski mask at the time of the robbery, removed his mask when the robbers were changing cars. She said she had a good look at him then, that "their eyes met," and that she would "know his face anywhere."

Ms. Noel's identification, both at the jail on the night of the robbery and in court, was unqualified. As we pointed out in *State v. Washington*, 257 N.W.2d 890, 893–94 (Iowa 1977), most line-up or similar procedures are suggestive to some degree; but this does not necessarily render identification testimony inadmissible. Each case depends on its own total circumstances. *Mark*, 286 N.W.2d at 405. Here our task is made easier by Ms. Noel's unshaken testimony. Her in-court identification of Ingham had the "independent origin" referred

to in *State v. Wisniewski*, 171 N.W.2d 882, 885 (Iowa 1969). *See also Washington*, 257 N.W.2d at 894. Applying the *Mark* criteria to this case, we believe the trial court correctly permitted the jury to consider the identification testimony.

## IV. *Additional Jurors.*

■ Apprehensive that a jury could not be drawn from those comprising the original panel, the trial court called additional jurors on its own initiative. Defendants object to this, even though they had earlier complained because the panel was too small. Defendants claim support for their view is found in *State v. John*, 124 Iowa 230, 233, 100 N.W. 193, 195 (1904). On the contrary, we find this case, when considered in its entirety, is authority for the state rather than the defendants. The trial court's action was authorized by section 609.36, The Code. There is no merit in this complaint.

## V. *Minutes of Testimony.*

■ Michael Petersen, the State's identification expert, testified to certain matters as outlined in the minutes of his testimony. In doing so, he used photographs to illustrate his testimony. Defendants say this was error because they did not know he intended to use such aids.

In *State v. Walker*, 281 N.W.2d 612, 614 (Iowa 1979), we said that minutes of testimony must be sufficient to advise defendant fully and fairly concerning the evidence to be used against him. Here the witness did not go beyond the minutes. The photographs served only to explain his testimony. Nothing in *Walker* prohibits this routine trial practice.

## VI. *Refusal to Permit Expert Testimony.*

During trial defendants asked funds with which to bring Dr. Robert Salso from Idaho to testify as an expert witness concerning the unreliability of eye witness testimony. Dr. Salso is a professor of psychology at the University of Idaho. He has written extensively on eyewitness perception and has testified as an expert on that subject in a number of cases.

The trial court refused to interrupt the trial to permit his attendance. The State had objected on the grounds that such testimony invaded the province of the jury and because the proposed testimony is not a proper subject for expert opinion. The trial court denied the request. We set out the relevant portions of the ruling.

> THE COURT: It's the feeling of this Court on the record ... at this ... point of the trial that ... the Court will [not] allow this witness to be brought in to testify at State expense.
>
> ....
>
> The Court will elaborate to this extent. The stated expense for this individual, the Court would feel, might be reasonable. The Court also feels that at this point of the trial, ... it's a little late to be requesting the Court for permission to ship out an expert from Idaho to testify with regard to eye-witness identification.
>
> ....
>
> ... I could foresee no end to this trial if that were allowed. It appears to me, on request of the State, the Court would have to grant a continuance for them to have an opportunity to contact an expert to rebut this witness' testimony. I don't think it's fair to the State. I don't think it's fair to the clients. I don't think it's fair to the Court.

Clearly the trial court was within its discretion in refusing to interrupt the trial on such a belated motion. Defendants then offered to produce Dr. Salso without expense to the state. This was also rejected by the trial court. Counsel next wanted to know if the trial court's ruling applied to *any* witness who might be called to testify on this subject. Basing its ruling "on the record," the trial court said it did.

We doubt if this presents anything for us to rule on. Defendants had already made it clear they had no other witness. It is hardly conducive to orderly trials to begin a search for witnesses, particularly experts, while trial is in progress.

Defendants want us to reconsider *State v. Galloway*, 275 N.W.2d 736 (Iowa 1979), an invitation we decline. In *Galloway*, we said evidence of the kind proposed to be introduced here should not have been received. *Id.* at 741 (Reynoldson, C. J., concurring specially and joined by six other justices). If we were to review *Galloway*, as defendants want us to, anything we say would be in the nature of an advisory opinion. This record discloses no refusal to allow an *available* witness to testify.

We hold the trial court did not abuse its discretion in ruling as it did.

VII. We have considered all the matters raised by defendants and find no reversible error. The judgment is affirmed.

AFFIRMED.