STATE of Iowa, Appellee,

v.

Raymond Anthony
DERIFIELD, Appellant.

No. 89-1464.

Court of Appeals of Iowa.

Jan. 29, 1991.

Linda Del Gallo, Acting State Appellate Defender, and Patricia R. Lapointe, Asst. State Appellate Defender, for appellant.

Bonnie J. Campbell, Atty. Gen., Julie Ann Halligan, Asst. Atty. Gen., Thomas Ferguson, Acting County Atty., and Thomas Bower, Asst. County Atty., for appellee.

Heard by SCHLEGEL, P.J., and HAYDEN and SACKETT, JJ.

SCHLEGEL, Presiding Judge.

Defendant Raymond Anthony Derifield appeals his jury conviction of possession of a schedule II controlled substance (marijuana) with intent to deliver. Defendant argues that the trial court erred in denying his motion to suppress evidence obtained after a warrantless search of his automobile. Defendant further contends that the trial court erred in overruling various objections to expert testimony offered to show intent to deliver and in denying a motion for judgment of acquittal. We reverse and remand for a new trial.

On November 17, 1988, a Black Hawk County deputy sheriff observed defendant driving very erratically. Deputy Sheriff Donald George stopped defendant and requested to see his driver's license. When defendant informed Deputy George that his license had been suspended and Deputy George detected the odor of alcohol, defendant was asked to exit the car. Defendant failed field sobriety tests. Deputy George arrested defendant, read him his *Miranda* rights, and placed defendant in the back of the patrol car.

When defendant exited his car, Deputy George observed a homemade pipe resting on the console between the seats. After the deputy placed defendant in the patrol car, he returned to defendant's car, seized the pipe, and using a flashlight searched the front and back seats, including the floors, of the car for contraband and valuables. Finding nothing, Deputy George radioed defendant's request to have a local service station tow the vehicle.

Shortly thereafter, Sergeant J.D. Hostetler, Black Hawk County Deputy Sheriff, arrived. Deputy George informed Sergeant Hostetler, his supervisor, that he had searched the car and had found nothing. Deputy George then transported defendant to the sheriff's office, where defendant tested at 0.110 percent blood-alcohol and was booked for operating a vehicle while intoxicated. Sergeant Hostetler remained with the vehicle until defendant's car was towed. Although he later would testify in detail about the specifics of his role in the arrest, Sergeant Hostetler stated he "[did not] really recall" whether he "might" have been asked to check the car for valuables.

After Deputy George had departed with defendant, Sergeant Hostetler made a second search of the car. Under the driver's seat, wadded up in a ball, he found an opaque, plastic shopping bag. Inside the plastic bag was a brown paper bag, and inside the paper bag was approximately 12 grams of marijuana in several small, plastic sandwich bags and a hand-held gram scale. Defendant was charged with possession of marijuana with intent to deliver.

At trial and on appeal, defendant argues that the fruits of the second search should have been suppressed. Defendant contends that the search was unreasonable and falls in no recognized exception to the fourth amendment's warrant requirement.

Our review is de novo. We make an independent evaluation of the totality of the circumstances shown by the entire record. *State v. Campbell,* 326 N.W.2d 350, 352 (Iowa 1982).

Recently, the Iowa Supreme Court reiterated the fact that "warrantless searches and seizures are per se unreasonable unless they come within a few 'jealously and carefully drawn' exceptions." *State v. Garcia,* 461 N.W.2d 460, 462 (Iowa 1990). "The burden," the court noted, "is upon those seeking to apply the exceptions to prove their applicability by a preponderance of the evidence." *Id.* (citing *State v. Bakker,* 262 N.W.2d 538, 546 (Iowa 1978)). The three recognized exceptions, as noted in *State v. Shane,* 255 N.W.2d 324, 326 (Iowa 1977), and *State v. Jackson,* 210 N.W.2d 537, 539 (Iowa 1973), and restated in *Garcia,* 461 N.W.2d at 462–63, are as follows:

> No warrant is necessary when the search and seizure, within prescribed limits, are incident to a lawful arrest; the warrant requirement may be waived by an informed and voluntary consent; and, third, existence of exigent circumstances may relieve an officer from the obligation to obtain a warrant if it is impracticable to do so.

No claim can be made that the second search by Sergeant Hostetler was made pursuant to either consent or exigent circumstances. Although there is some suggestion that both searches were "routine procedure," the State does not contend that either search was an inventory search. *See South Dakota v. Opperman,* 428 U.S. 364, 375–76, 96 S.Ct. 3092, 3100–01, 49 L.Ed.2d 1000 (1976). The question remaining is whether the second search was incident to arrest. *See Garcia,* 461 N.W.2d at 463 (citing *New York v. Belton,* 453 U.S. 454, 460, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768 (1981)).

In *State v. Sanders*, 312 N.W.2d 534, 539 (Iowa 1981), the Iowa Supreme Court adopted the *Belton* rule "that when a policeman has made a lawful arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." *Belton*, 453 U.S. at 460, 101 S.Ct. at 2864 (footnotes omitted). If *Sanders* and *Belton* apply to the search conducted by Sergeant Hostetler, the rule would also apply to validate searches of containers found in the passenger compartment. *Sanders*, 312 N.W.2d at 539.

■ A search incident to arrest involves two questions, that is, whether the arrest was valid and, if so, whether the search was reasonable both as to the area covered and the time within which it was made. *State v. Shane*, 255 N.W.2d 324, 326 (Iowa 1977). We have no doubt, and indeed, defendant does not challenge the validity of the stop or arrest. *See United States v. Cortez*, 449 U.S. 411, 418, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981) (requiring particularized, objective basis for stop). Likewise, neither this court nor defendant doubts the validity or reasonableness of the search made by Deputy George. Had this classic search of an automobile incident to the arrest of the driver yielded the fruits defendant seeks to suppress, we would have no difficulty in applying the *Belton–Sanders* rule permitting the admission of such evidence. *See Garcia*, 461 N.W.2d at 463–64.

■ We are not concerned with the contemporaneousness of the second search. It is evident, at least from *Cooper v. California*, 386 U.S. 58, 61–62, 87 S.Ct. 788, 790–91, 17 L.Ed.2d 730 (1967), that a search of a vehicle, depending on the circumstances, need not necessarily follow directly on the heels of the arrest. *Cf. United States v. Edwards*, 415 U.S. 800, 806–09, 94 S.Ct. 1234, 1238–40, 39 L.Ed.2d 771 (1974). Even so, it would appear that the second search here was several minutes after the arrest and might be considered "contemporaneous." Furthermore, it is now well established that such a search may take place after the occupants have been removed

from the vehicle, handcuffed, and placed a safe distance away. *Garcia*, 461 N.W.2d at 461–62; *Shane*, 255 N.W.2d at 328.

■ *Belton*, by its own terms, however, is not unlimited. The United States Supreme Court carefully noted that *Belton* "in no way alters the fundamental principles established in [*Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969),] regarding the basic scope of searches incident to lawful custodial arrests." *Belton*, 453 U.S. at 460 n. 3, 101 S.Ct. at 2864 n. 3. The *Chimel* court stated:

> When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons. . . . In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person. . . . And the area into which an arrestee might reach in order to grab a weapon or evidentiary items must, of course, be governed by a like rule. . . . There is ample justification, therefore, for a search of the arrestee's person and the area "within his immediate control"—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence.
>
> There is no comparable justification, however, for routinely searching any room other than that in which an arrest occurs—or, for that matter, for searching through all the desk drawers or other closed or concealed areas in that room itself. Such searches, in the absence of well-recognized exceptions, may be made only under the authority of a search warrant. [*See Katz v. United States*, 389 U.S. 347, 357–58, 88 S.Ct. 507, 514–15, 19 L.Ed.2d 576 (1967).] The "adherence to judicial processes" mandated by the Fourth Amendment requires no less.

*Chimel*, 395 U.S. at 762–63, 89 S.Ct. at 2040. Citing *Carroll v. United States*, 267 U.S. 132, 153, 45 S.Ct. 280, 285, 69 L.Ed. 543 (1925), and quoting *Preston v. United States*, 376 U.S. 364, 367, 84 S.Ct. 881, 883, 11 L.Ed.2d 777 (1964), the *Chimel* Court noted that the same principle holds for

vehicle searches. *Id.* at 763–64 & n. 9, 89 S.Ct. at 2040–41 & n. 9. One principle underlying quoted language from *Chimel* and *Preston* and better expressed in subsequent cases such as *Mincey v. Arizona,* 437 U.S. 385, 393–95, 98 S.Ct. 2408, 2413–15, 57 L.Ed.2d 290 (1978), is that when the justification for the warrantless search ceases to exist, it is no longer reasonable for the police to continue a warrantless search. As the United States Supreme Court has very clearly pointed out, "'[A] warrantless search must be 'strictly circumscribed *by the exigencies which justify its initiation.*'" *Mincey,* 437 U.S. at 393, 98 S.Ct. at 2413 (quoting *Terry v. Ohio,* 392 U.S. 1, 25–26, 88 S.Ct. 1868, 1882–83, 20 L.Ed.2d 889 (1968)) (emphasis added). Precisely the same sentiments may be found in *Belton,* 453 U.S. at 457, 101 S.Ct. at 2862–63, and *Chimel,* 395 U.S. at 762, 89 S.Ct. at 2039–40, which quote this language from *Terry.*

The so-called "automobile exception" stated in *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925), and extended in *United States v. Ross,* 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982), allows a search when "there is known to a competent official authorized to search, probable cause for believing that [the vehicle is] carrying contraband or illegal merchandise." *Ross,* 456 U.S. at 808, 102 S.Ct. at 2164 (quoting *Carroll,* 267 U.S. at 154–54, 45 S.Ct. at 285). The court in *Ross* noted the importance of probable cause several times, stating that "the probable-cause determination must be based on objective facts that could justify the issuance of a warrant by a magistrate and not merely on the subjective good faith of the police officers." *Ross,* 456 U.S. at 808, 102 S.Ct. at 2164; *see also Carroll,* 267 U.S. at 161–62, 45 S.Ct. at 288. Notably, both the *Ross* and the *Carroll* arrests arose from circumstances in which the police stopped the individuals involved and acted on reliable information that they were carrying and selling contraband. *Ross,* 456 U.S. at 800, 102 S.Ct. at 2160; *Carroll,* 267 U.S. at 174, 45 S.Ct. at 292. *Ross,* however, does not purport to upset the underlying principles of *Chimel.* As is

aptly expressed by Mr. Justice Stewart, "The word 'automobile' is not a talisman in whose presence the Fourth Amendment fades away and disappears." *Coolidge v. New Hampshire,* 403 U.S. 443, 461, 91 S.Ct. 2022, 2035, 29 L.Ed.2d 564 (joined by Douglas, Brennan, and Marshall, JJ.), *reh'g denied,* 404 U.S. 874, 92 S.Ct. 26, 30 L.Ed.2d 120 (1971).

■ We hold that the second search of defendant's car by Sergeant Hostetler was not a search incident to arrest. It is abundantly clear that such a search had already been conducted and had yielded nothing. No Iowa case discussing the *Carroll–Belton–Ross* and *Sanders* lines of authority purports to extend the bounds of warrantless searches indefinitely to allow repeated or extended incursions. *See, e.g., Garcia,* 461 N.W.2d at 462–64; *State v. McGee,* 381 N.W.2d 630, 633 (Iowa 1986); *State v. Olsen,* 315 N.W.2d 1, 4 (Iowa 1982); *Sanders,* 312 N.W.2d at 538. We are not now prepared to hold that law enforcement officials may make an unlimited number of forays into otherwise protected private interests. Here, a deputy had arrested the defendant and made the permitted search incident to the arrest, and "minutes after the defendant's arrest," according to the State, and after the removal of defendant, a second deputy conducted another search. "[A] warrantless search must be *'strictly circumscribed by the exigencies which justify its initiation.'*" *Mincey,* 437 U.S. at 393, 98 S.Ct. at 2413 (quoting *Terry,* 392 U.S. at 25–26, 88 S.Ct. at 1882) (emphasis added); *accord Belton,* 453 U.S. at 457, 101 S.Ct. at 2862–63; *Chimel,* 395 U.S. at 762, 89 S.Ct. at 2039–40. There simply were no exigencies remaining from the arrest to justify the initiation of a second, warrantless search.

The cases cited by the State demonstrate the reasonableness of an initial, warrantless search at times and places remote from the arrest scene. *See State v. Blair,* 632 S.W.2d 567, 569 (Tenn.Crim.App.1982) (upholding stationhouse search after defendant under arrest drove car from arrest scene); *see also State v. Calegar,* 104 Idaho 526, 530, 661 P.2d 311, 315 (1983) (up-

holding stationhouse search of suitcase because it could have been, but was not, searched at the scene pursuant to *Belton*). Even if we were to find these cases persuasive, they simply do not address the issue before us. Mere contemporaneity or proximity of a second, warrantless search to the arrest does not, as the State seems to suggest, supply the required "reasonableness" to support the lawfulness of that search. *Belton*, 453 U.S. at 457, 101 S.Ct. at 2862–63; *Mincey*, 437 U.S. at 393, 98 S.Ct. at 2413; *Chimel*, 395 U.S. at 762, 89 S.Ct. at 2039–40; *Terry*, 392 U.S. at 25–26, 88 S.Ct. at 1882.

Had there been independent probable cause to believe that defendant's vehicle contained contraband and, thus, support a second search of the vehicle, we might have been forced to a different result. *Ross*, 456 U.S. at 808, 102 S.Ct. at 2164 (quoting *Carroll*, 267 U.S. at 154–54, 45 S.Ct. at 285); *see also Cooper v. California*, 386 U.S. 58, 62, 87 S.Ct. 788, 791, 17 L.Ed.2d 730 (" '[t]he relevant test is not whether it is reasonable to procure a search warrant, but whether the search was reasonable' " (quoting *United States v. Rabinowitz*, 339 U.S. 56, 66, 70 S.Ct. 430, 435, 94 L.Ed. 653 (1950))), *reh'g denied*, 386 U.S. 988, 87 S.Ct. 1283, 18 L.Ed.2d 243 (1967). The State offers no such argument or evidence. Our search of the record and briefs reveals no indication that Sergeant Hostetler had probable cause to support a belief that the vehicle contained contraband. There is no indication that he even knew of the existence of the pipe seized by Deputy George. The contraband was inside two opaque containers well under a seat and not in plain view. This was not an inventory search.

■ We hold that the evidence obtained through the search by Sergeant Hostetler should have been suppressed because the State has failed in its burden to show that the warrantless search was reasonable or was within one of the recognized exceptions to the warrant requirement. Undoubtedly, it is important for the courts and the law enforcement community, as well as defendants, that the law in this "troubled area" of the fourth amendment be established clearly. *See Ross*, 456 U.S. at 825, 102 S.Ct. at 2173 (Blackmun, J., concurring). Nevertheless, we do not, in the case at bar, blur the "bright-line" rules. That line remains unaffected. In this case, however, it is clear that law enforcement officials stepped over that line—perhaps unintentionally.

Because of our holding, we need not address defendant's other assignments of error. We reverse the judgment of conviction and remand the case to the district court for a new trial.

REVERSED AND REMANDED.

HAYDEN, J., concurs.

SACKETT, J., dissents.

SACKETT, Judge (dissenting).

I would affirm the trial court.