# IN THE COURT OF APPEALS OF IOWA

No. 21-1734
Filed November 17, 2022

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**ALLIX JAMES INEZ BETSINGER,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Emmet County, Nancy L. Whittenburg, Judge.

Allix Betsinger appeals the denial of his motion to suppress. **AFFIRMED.**

Peter Ickes of Stowers & Nelsen PLC, West Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Timothy M. Hau, Assistant Attorney General, for appellee.

Heard by Bower, C.J., and Greer and Badding, JJ.

**BOWER, Chief Judge.**

Allix Betsinger appeals the denial of his motion to suppress evidence. Because the initial evidence was not obtained as a result of an illegal search and Betsinger has no standing to challenge the search of another person, we affirm.

**I. Background Facts & Proceedings.**

At 2:47 in the morning on May 23, 2020, Deputy Sheriff Merwald was driving west and saw an east-bound vehicle cross over the center line into his lane of traffic. Deputy Merwald conducted a traffic stop of the vehicle and approached from the passenger side—away from traffic. Donald Dorenkamp was driving the vehicle; Betsinger, who owned the vehicle, sat in the front passenger seat. As the deputy approached the vehicle, he observed through the windows evidence of a road trip—a duffle bag, sleeping bag, blankets, pillows, and energy drinks.

Betsinger rolled down the passenger window. Deputy Merwald leaned down to speak with the occupants of the vehicle, and he placed his arms on top of the lowered window with his head by the open window. Deputy Merwald noticed both Dorenkamp and Betsinger appeared nervous, with shaky hands. Dorenkamp's face was flushed, and his voice was shaky. As Betsinger handed over his vehicle registration, the deputy "observed the odor of marijuana come from the vehicle." The deputy asked for both men's identification. He saw a large amount of cash in Betsinger's wallet. The deputy recognized Betsinger's name from a previous case where an informant indicated Betsinger "was involved in the sales of narcotics."

The deputy asked Dorenkamp to step out of the vehicle and come back to the patrol vehicle, as was his customary practice in traffic stops. Dorenkamp forgot

to place the car in park and the vehicle started to roll. The deputy asked to pat down Dorenkamp before they got into the patrol car, and Dorenkamp consented. The deputy located an item in Dorenkamp's front pocket and asked what it was, recognizing it as a legal marijuana container.[1] Dorenkamp confirmed it was a marijuana container but stated it was empty. Once in the front seat of the patrol vehicle, Dorenkamp told Deputy Merwald they had just left Fort Dodge. However, the vehicle was heading in the wrong direction for that to be true.

The deputy called for backup. Both Dorenkamp and Betsinger were detained. The deputy and his backup searched the vehicle, finding THC and CBD vape cartridges; receipts from Colorado dispensaries; cash; a vacuum-sealed substance that appeared to be cocaine; and a heavy, padlocked duffle bag that smelled of marijuana. Deputy Merwald called for the vehicle to be towed. The deputy applied for a search warrant of Betsinger's vehicle. The search yielded marijuana, THC edibles, and some MDMA in addition to the previously listed items.[2] Deputy Merwald then applied for a warrant of Betsinger's house, where more marijuana and drug paraphernalia was found.

Betsinger filed a motion to suppress "all evidence found as a result of the traffic stop and subsequent search of his home" under the Fourth Amendment of the United States Constitution and article I, section 8 of the Iowa Constitution.

---

[1] Deputy Merwald explained that in other states, marijuana wax used in a vape pen can be legally purchased in a container like the one in Dorenkamp's pocket. He described it as "a small cylinder-type container. It's got a real thin rimmed lid on it. And usually it's got some edges where you place your fingers. You squeeze the top. It's a thinner plastic so that, when you squeeze the top, it bends enough to pop the top open."

[2] Neither Betsinger nor Dorenkamp claimed ownership of the padlocked duffle bag or a suitcase located in the trunk containing marijuana and edibles.

Specifically, Betsinger argued "Deputy Merwald exceeded the scope and duration of the traffic stop," "conducted an illegal search of the vehicle," and "conducted an illegal pat-down search" of Dorenkamp. He reasoned, because the evidence obtained from the traffic stop should be suppressed, there was not probable cause to support the search of his home.

The State resisted, asserting the traffic stop was still in progress when the deputy detected the smell of marijuana, Dorenkamp consented to the pat down, and the deputy knew what the container in Dorenkamp's pocket was based on its shape and size.

After hearing testimony from Deputy Merwald, watching the body-cam footage of the stop, and hearing the parties' arguments, the court denied the motion to suppress.[3]

Betsinger waived a jury trial. The court tried Betsinger on the minutes of testimony with a stipulated record. The court found him guilty of twelve assorted drug offenses.

Betsinger appeals the denial of his motion to suppress, arguing the deputy illegally intruded into his vehicle and exceeded the scope and duration of the traffic stop and, without that intrusion, the deputy would not have probable cause to pat down Dorenkamp or obtain warrants to search Betsinger's home.

**II. Standard of Review.**

> We review the district court's denial of a motion to suppress based on the deprivation of a constitutional right de novo. In our review, we must make "an independent evaluation of the totality of the circumstances as shown by the entire record." "We give deference to the district court's fact findings due to its opportunity to

---

[3] The suppression hearing was a joint hearing for both Betsinger and Dorenkamp.

assess the credibility of witnesses, but we are not bound by those findings."

*In re Pardee*, 872 N.W.2d 384, 390 (Iowa 2015) (quoting *State v. Tyler*, 867 N.W.2d 136, 152 (Iowa 2015)).

**III. Analysis.**

Betsinger does not contest the validity of the initial traffic stop, instead arguing the deputy's actions exceeded the scope of the stop and thus were unconstitutional under the Fourth Amendment to the United States Constitution and article I, section 8 of the Iowa Constitution.[4]  Recently, our supreme court has noted inconsistent application of the Fourth Amendment in federal jurisprudence and opted to apply the Iowa Constitution in a more textual fashion.  *See State v. Wright*, 961 N.W.2d 396, 411–12 (Iowa 2021) (plurality opinion).

We use "a two-step approach to determine whether there has been a violation of the Fourth Amendment or article I, section 8 of the Iowa Constitution." *State v. Lowe*, 812 N.W.2d 554, 567 (Iowa 2012).  The first step is to determine whether the individual challenging the search had a legitimate expectation of privacy in the area searched.  *Id.*  An alternative method to meet the first step occurs "when, without a warrant, the officer physically trespasses on protected property."  *Wright*, 961 N.W.2d at 416 (majority opinion); *State v. Wilson*, 968 N.W.2d 903, 913, 915–16 (Iowa 2022) (recognizing and applying both *Wright*'s trespass alternative and the expectation-of-privacy test).  If the first step is met, we then "decide whether the State unreasonably invaded the protected interest."

---

[4] Article I, section 8 of the Iowa Constitution states, "The right of the people to be secure in their persons, houses, papers and effects, against unreasonable seizures and searches shall not be violated."

*Lowe*, 812 N.W.2d at 567–68; *see Wright*, 961 N.W.2d at 418–19 (evaluating a citizen's privacy interests in their discarded trash).

*A. Trespass exceeding scope of stop.* Betsinger alleges the deputy "broke the plane," trespassing into protected property by leaning into the open window of the vehicle and exceeding the scope of the traffic stop. *See Wilson*, 968 N.W.2d at 916 (ruling an officer who placed his foot across the threshold to prevent the home's occupant from terminating an encounter committed a trespass); *Wright*, 961 N.W.2d at 412 (plurality opinion) (holding "a peace officer engaged in general criminal investigation acts unreasonably under article I, section 8 [of the Iowa Constitution] when the peace officer commits a trespass against a citizen's house, papers, or effects without first obtaining a warrant"). Betsinger argues because the intrusion into the vehicle impermissibly exceeded the scope of the traffic stop, any resulting evidence from the initial vehicle search should be suppressed.

The scope and duration of a traffic stop includes not only determining whether to issue a traffic ticket, but also "checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Rodriguez v. United States*, 575 U.S. 348, 355 (2015). "[A]n officer 'may conduct certain unrelated checks during an otherwise lawful traffic stop' but 'may not do so in a way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual.'" *Pardee*, 872 N.W.2d at 393 (quoting *Rodriguez*, 575 U.S. at 355); *accord State v. Warren*, 955 N.W.2d 848, 865 (Iowa 2021) (noting questions related to the traffic violation and related safety concerns are permissible).

A search occurs "whenever the government commits a physical trespass against property, even where de minimis, conjoined with 'an attempt to find something or to obtain information.'" *Wright*, 961 N.W.2d at 413 (plurality opinion). "Within the meaning of article I, section 8, an officer acts unreasonably when, without a warrant, the officer physically trespasses on protected property or uses means or methods of general criminal investigation that are unlawful, tortious, or otherwise prohibited." *Id.* at 416 (majority opinion). This analysis includes considering whether the defendant had a constitutional interest in protecting the trespassed location under the facts presented. *See Wilson*, 968 N.W.2d at 915 (holding Wilson did not abandon privacy of the home beyond what could be seen through a partially opened door). Our supreme court recently restated vehicles have a lower expectation of privacy, and therefore a lesser protected interest, compared to homes. *See State v. Rincon*, 970 N.W.2d 275, 280 (Iowa 2022) (citing *State v. Storm*, 898 N.W.2d 140, 145 (Iowa 2017)).

Deputy Merwald was within the initial inquiries of his traffic-stop investigation when he leaned over to speak with both Betsinger and Dorenkamp, putting his head at a level where he could be seen from both seats. The deputy leaned his arm along the top of the window to speak with Dorenkamp about crossing over a no-passing line into oncoming traffic at 2:47 a.m. The deputy leaning a hand and arm against the window while legitimately investigating a traffic violation was not an unlawful invasion, was not unreasonable under the circumstances, and did not violate Betsinger's constitutional rights.

Moreover, the deputy was not intruding into the vehicle when he smelled marijuana. Deputy Merwald's report and testimony indicate he first detected the

odor of marijuana when Betsinger handed him the insurance paperwork. The video shows the deputy is standing upright, with the frame of the window visible, when the exchange happened. Betsinger has no protected property interest in air that leaves his vehicle through an open window. We do not ask law enforcement to ignore evidence they can see, hear, or smell because it is unrelated to the specific reason for the traffic stop. *See, e.g.*, *Lowe*, 812 N.W.2d at 569 ("So long as officers make their observations from a location where they have a right to be, they have 'a right to see what [is] visible from that position.'" (citation omitted)); *State v. Moriarity*, 566 N.W.2d 866, 868–69 (Iowa 1997) (finding an alligator clip hanging from the mirror and the smell of burnt marijuana was sufficient probable cause to search). Nor was it outside the scope of the traffic stop and related safety concerns when the deputy looked through the windows into the rear of the vehicle.

Because the deputy's observations were made within the lawful scope of the traffic stop, the smell of marijuana and resulting search of his vehicle did not violate Betsinger's constitutional rights.

*B. Pat down of Dorenkamp.* Betsinger argues the deputy conducted the pat down of Dorenkamp without reasonable suspicion. The district court ruled the deputy did not have sufficient reason for a protective search and the plain-view doctrine did not apply. But, the court found the evidence should not be suppressed based on the inevitable discovery doctrine. The court decided the deputy had sufficient probable cause to search the vehicle because of the marijuana odor and given the contraband in the vehicle, "Dorenkamp would have been arrested for possession of controlled substances even if he had not been patted down first."

Betsinger's challenge here fails on the first step of our analysis. "[I]n order to claim the protection of the Fourth Amendment, a defendant must demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable." *Minnesota v. Carter*, 525 U.S. 83, 88 (1998); *Lowe*, 812 N.W.2d at 567 ("In order to object to the evidence on constitutional grounds, Lowe must show that his own constitutional rights, under either the state or federal constitutions, have been violated."). Betsinger had no property interest or legitimate expectation of privacy in Dorenkamp's pants pocket, and therefore the pat down did not violate Betsinger's constitutional rights. *See Wright*, 961 N.W.2d at 415 ("Heinz's seizure and search of the papers and effects would be inconsequential if the papers and effects did not belong to Wright."); *State v. Dixon*, 241 N.W.2d 21, 23–24 (Iowa 1976) (finding the driver had no standing to object to the search of the passenger's wallet).

*C. Warrants.* Betsinger next argues that because the initial detection of marijuana odor and the pat down of Dorenkamp were illegal, the evidence found from the vehicle search should be suppressed as fruit of the poisonous tree. He then takes the next step and argues all evidence obtained executing warrants based on the vehicle-search evidence should also be suppressed.

Considering our rulings above, this argument is without merit, and we affirm the district court's denial of Betsinger's motion to suppress.

**AFFIRMED.**