STATE of Iowa, Appellee,

v.

Carl Eric OLSEN, Appellant.

No. 63567.

Supreme Court of Iowa.

June 18, 1980.

Raymond Rosenberg of Rosenberg & Margulies, Des Moines, for appellant.

Thomas J. Miller, Atty. Gen., Richard L. Cleland, Asst. Atty. Gen., and S. J. Peterson, Muscatine County Atty., for appellee.

Considered by REYNOLDSON, C. J., and REES, HARRIS, McCORMICK, and ALLBEE, JJ.

McCORMICK, Justice.

Defendant Carl Eric Olsen appeals his conviction by jury and sentence for possession of a controlled substance with intent to deliver in violation of § 204.401(1), The Code 1977. He contends the trial court erred in overruling his motion to suppress evidence obtained in a search of his automobile and in overruling his objection to testimony of a D.C.I. agent which went beyond the scope of the minute of his testimony attached to the trial information. We uphold the ruling on the search issue but reverse and remand on the issue of the D.C.I. agent's testimony.

I. *The search issue.* Defendant moved to suppress evidence seized as a result of a search of his automobile, alleging that the search violated U.S.Const. Amend. IV and Iowa Const. art. I, § 8. Among other grounds, he contended the search was unlawful because made pursuant to a warrant which was invalid because it did not describe with particularity the place to be searched and the property to be seized. Judge Margaret Briles overruled the motion, and defendant contends the ruling was wrong because of the inadequacy of the description. In resisting reversal, the State alleges the warrant was valid, but, even if it was not, the search was nevertheless lawful because of the existence of probable cause and exigent circumstances. Because a constitutional challenge is involved, we find the facts de novo. *State v. Aschenbrenner,* 289 N.W.2d 618, 619 (Iowa 1980).

While driving his 1977 Dodge automobile near West Liberty at approximately 10:45 p. m. on May 20, 1978, defendant passed two other vehicles in a no-passing zone. The incident was observed by deputy sheriff Lowell Snyder, who pursued defendant and stopped his automobile in West Liberty. Two West Liberty police officers came to the scene of the stop shortly afterward. Snyder was somewhat suspicious of defendant because he was driving a car with out-

of-county plates, seemed to be unfamiliar with the road, and appeared to be in a hurry. As a result, he ordered a vehicle check which confirmed defendant's ownership of the automobile. While issuing him a citation for the traffic violation, Snyder smelled marijuana on defendant's clothing. He and the other officers also smelled a strong marijuana odor coming from the interior of the vehicle. One officer observed and removed a marijuana cigarette, which he called "a large roach," from the front ashtray. A small cardboard box containing marijuana seed was removed from the front seat. The officers, who were experienced in drug investigations, believed the odor of marijuana was stronger than could be accounted for by the cigarette. They noticed the rear of the vehicle appeared to be weighted down.

Defendant was placed under arrest for possession of marijuana. A search of his clothing turned up a small "rock-hard" quantity of hashish in a shirt pocket and twelve to fourteen dollars in quarters in his trouser pockets. He admitted to a prior arrest for possession of marijuana. The officers searched the interior of the vehicle without finding any additional drugs. They then asked defendant for permission to search the trunk. He became quite nervous and refused, telling the officers he had people waiting for him and was in a hurry. He asked them to leave his vehicle alone.

The officers suspected defendant might be carrying additional marijuana in the trunk of the car. For that reason they decided to take the vehicle to the West Liberty police station to be held while they sought a search warrant. The vehicle was towed to the station and guarded until a warrant was obtained.

Deputy Snyder obtained and executed the search warrant. He found 129 pounds of marijuana in the trunk of the vehicle, most of which was contained in bales wrapped in brown paper. Another officer discovered a white paper bag behind the spare tire which contained $10,915 in currency. Additional marijuana was found in a briefcase, and other items were also seized.

We will assume, without deciding, that the warrant was invalid in form as asserted by defendant because we believe it is clear the State is right that the search was lawful even without the warrant.

■ While a warrant is preferred, the fourth amendment "does not require a search warrant . . . when the police stop an automobile on the street or highway because they have probable cause to believe it contains contraband or evidence of a crime." *Arkansas v. Sanders*, 442 U.S. 753, 760, 99 S.Ct. 2586, 2591, 61 L.Ed.2d 235, 242 (1979). While the "automobile exception" does not invariably authorize warrantless vehicle searches, the Supreme Court has recognized two reasons for treating the warrant requirements differently for automobiles than for other private property. One is the "inherent mobility" of automobiles, and the other is the diluted "reasonable expectation of privacy" resulting from their "configuration, use, and regulation." *Id.* at 761, 99 S.Ct. at 2591, 61 L.Ed.2d at 243.

The *Carroll-Chambers* doctrine has evolved in automobile search cases. In *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925), the Supreme Court held that a search warrant is unnecessary for search of an automobile when probable cause and exigent circumstances exist. Furthermore, the exigent circumstances requirement is satisfied "when the car is movable, the occupants are alerted, and the car's contents may never be found again if a warrant must be obtained." *Chambers v. Maroney*, 399 U.S. 42, 51, 90 S.Ct. 1975, 1981, 26 L.Ed.2d 419, 428 (1970).

In *Chambers* the Court carried *Carroll* one major step further. The question in *Chambers* was the admissibility of evidence seized from an automobile after the automobile was taken from the scene of the accused's arrest to a police station and there thoroughly searched without a warrant. The Court held that if a warrantless search of the automobile at the scene would have been reasonable, the automobile could be seized and taken to the station house for

the later warrantless search. The Court said: "For constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment." *Id.* at 52, 90 S.Ct. at 1981, 26 L.Ed.2d at 428.

We applied the *Carroll-Chambers* doctrine in upholding a warrantless search of an automobile at the scene of arrest in *State v. King*, 191 N.W.2d 650, 657 (Iowa 1971), *cert. denied*, 406 U.S. 908, 92 S.Ct. 1617, 31 L.Ed.2d 819 (1972) ("Under *Chambers* it was just as reasonable to search the car without a warrant as it would be to seize it and hold it until a warrant could be obtained.").

However, in *State v. Schlenker*, 234 N.W.2d 142, 145 (Iowa 1975), we refused to find exigent circumstances authorizing a warrantless search upon probable cause when an automobile had been immobilized long enough for officers to obtain a warrant which turned out to be invalid. We said: "The obtaining of the invalid warrant belies and negatives any rational claim of exigent circumstances." *Id.* At that time some doubt existed as to the scope of *Chambers*.

In *Preston v. United States*, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964), and *Dyke v. Taylor Implement Manufacturing Co.*, 391 U.S. 216, 88 S.Ct. 1472, 20 L.Ed.2d 538 (1968), the Supreme Court had invalidated station house searches of automobiles seized during arrests. Those cases were distinguished but not overruled in *Chambers*. Moreover, the *Chambers* opinion included a footnote specifically finding the decision of the officers in that case to search the car at the police station rather than at the scene was "not unreasonable" in the circumstances. 399 U.S. at 52 n.10, 90 S.Ct. at 1981, 26 L.Ed.2d at 429. It was not certain that *Chambers* was intended to give officers an automatic right to search a vehicle upon probable cause without a warrant after immobilizing it long enough to obtain

a warrant upon a mere showing that probable cause and exigent circumstances would have permitted a warrantless search at the time it was stopped.

This issue was settled by the Supreme Court in *Texas v. White*, 423 U.S. 67, 96 S.Ct. 304, 46 L.Ed.2d 209 (1975) (per curiam), decided after our decision in *Schlenker*. In *White* the Court held that so long as the probable cause for a search at the scene of the stop still obtained at the station house, a warrantless search at the station house was permissible. It is now clear that the absence of exigent circumstances for the later search is wholly irrelevant. Exigent circumstances are necessary only initially. In *White* the Court characterized its holding in *Chambers* by saying: "In *Chambers v. Maroney* we held that police officers with probable cause to search an automobile at the scene where it was stopped could constitutionally do so later at the station house without first obtaining a warrant." *Id.* at 68, 96 S.Ct. at 305, 46 L.Ed.2d at 211.

█ It is thus established as a matter of federal constitutional law that if the search in the present case could have been made at the scene of the stop without a warrant, the automobile could still be searched after it was moved to the police station, provided only that probable cause still existed. We are not free to give a more restrictive interpretation to the Federal Constitution than that of the United States Supreme Court. *Oregon v. Hass*, 420 U.S. 714, 719, 95 S.Ct. 1215, 1219, 43 L.Ed.2d 570, 576 (1975).

However, we are still free to apply our *Schlenker* holding as a matter of state law if we should exercise our prerogative to interpret the Iowa Constitution more restrictively than the Supreme Court has interpreted the comparable language in the Federal Constitution. *See Bierkamp v. Rogers*, 293 N.W.2d 577, —— (Iowa 1980) ("The result reached by the United States Supreme Court in construing the federal constitution is persuasive, but not binding upon this court in construing analogous provisions in our state constitution."). We have an interest in harmonizing our constitutional decisions with those of the

Supreme Court when reasonably possible, even though we recognize and will jealously guard our right and duty to differ in appropriate cases. In this case we are persuaded that the state constitution should be given the same interpretation as the Federal.

We conclude that we will apply the *Carroll-Chambers* doctrine under Iowa Const. art. I, § 8, rather than the holding in *Schlenker.*

■ The determinative issue thus becomes whether probable cause and exigent circumstances existed at the scene of the stop of defendant's vehicle. Applicable principles are reviewed in *State v. King*, 191 N.W.2d at 654–57. The finding of the marijuana cigarette in plain view in the automobile, defendant's possession of marijuana on his person, the strong odor of marijuana which could not be accounted for by those small quantities, the evidence of something heavy in the trunk of the car, defendant's nervousness when a search of the trunk was discussed, and other circumstances relied on here establish probable cause.[1] The exigency requirement, as explained in *Chambers*, is sufficiently established by the inherent mobility of the vehicle, the fact defendant was alerted, and the chance that the car's contents might not be found again if a warrant had to be then obtained. We hold that a warrantless search of the trunk at the scene would have been reasonable under the applicable constitutional provisions. The same probable cause to search existed later at the police station. Therefore, in accordance with *Chambers*, a warrantless search at the police station was permissible. The lawfulness of the search is thus not affected by the possible invalidity of the search warrant.

The trial court did not err in overruling defendant's motion to suppress the fruits of the search.

II. *The notice of testimony issue.*

The minutes of testimony attached to the trial information included the following:

Bradford Thompson, on oath, will testify that he is a resident of Davenport, Scott County and by occupation is peace officer; that on 5/20/78 he assisted the Muscatine County Sheriff's Department in processing evidence obtained from the defendant's vehicle; that he along with Deputy Snyder secured and tagged a number of packages of marijuana, that he subsequently transported the evidence to the BCI Crime Laboratory in Des Moines, Iowa and subsequently received a report from a BCI criminalist indicating that the substance in question was marijuana, a schedule I controlled substance.

When Thompson was called as a State witness, he identified himself as a D.C.I. agent, and the State proceeded to interrogate him about his training and experience in drug investigations. Then the State asked him questions concerning methods of packaging and distributing marijuana. These questions were material on the issue of defendant's alleged possession of the marijuana with intent to deliver. Defense counsel interposed timely objections to the questions "as going beyond the substance of matters set out in the minutes of testimony," and the trial court overruled the objections.

■ The State acknowledges that the trial court erred under Iowa R.Crim.P. 5(3) as construed in *State v. Walker*, 281 N.W.2d 612 (Iowa 1979), a decision filed subsequent to the trial of this case. In *Walker*, we held that rule 5(3) requires minutes of testimony to "be sufficient—fully and fairly—to alert defendant generally to the source and nature of the evidence against him." *Id.* at 614. That requirement was admittedly violated here. However, the State contends a new trial should not be ordered unless defendant shows he could refute Thompson's testimony upon retrial. While the State's argument appeals to our desire for efficient use of judicial resources, we do not believe defendant should be forced by the State's violation of the rule to persuade the judge

1. Because probable cause existed to search the trunk in this case, we are not required to decide whether in other cases probable cause might exist to search another part of the car but not the trunk. *See Wimberly v. Superior Court*, 16 Cal.3d 557, 547 P.2d 417, 423–28, 128 Cal.Rptr. 641, 647–52 (1976) (en banc).

that upon retrial a jury might reach a different result. The ameliorative remedy of a new trial which was fashioned in *Walker* is intended to encourage State compliance with the plain mandate of rule 5(3). The State's proposed solution would dilute the force of the rule and cast a burden on a defendant which the rule does not put there.

We hold that, under *Walker*, the State's violation of rule 5(3) entitles defendant to a new trial.

REVERSED AND REMANDED.