**STATE of Iowa, Appellee,**

v.

**Lawrence Paul HOLDERNESS, Appellant.**

**No. 63052.**

Supreme Court of Iowa.

Feb. 18, 1981.

**734**

G. David Binegar, Bettendorf, for appellant.

Thomas J. Miller, Atty. Gen., Thomas N. Martin and Douglas F. Staskal, Asst. Attys. Gen., William E. Davis, Scott County Atty., and Realff H. Ottesen, Asst. Scott County Atty., Davenport, for appellee.

Considered by REYNOLDSON, C. J., UHLENHOPP, HARRIS, ALLBEE and McGIVERIN, JJ.

ALLBEE, Justice.

Defendant Lawrence Paul Holderness appeals his convictions of sexual abuse in the

second degree and kidnapping in the first degree, violations of sections 709.3 and 710.2, The Code, respectively. He sets forth several assignments of error, which we consider in the order presented by his brief.

The circumstances from which this case arose are briefly as follows. On August 26, 1978, a ten-year-old girl was abducted while in a Davenport cemetery. After luring the girl from her bicycle to his car, the assailant choked her, partially removed her pants and "did some things" to her which she could not remember. The assailant also struck her on the head several times with both a club and his fist. Following this episode, he transported the victim out into the country, where she was subjected to various incidents of sexual abuse while still confined in the assailant's car. She was later released when he returned her to the cemetery.

The victim subsequently provided Davenport police descriptions of her assailant, his vehicle and its contents. Based upon the description of the vehicle and an owner's manual discovered in the cemetery, officers on August 29 located an automobile parked on a public street which resembled that used by the girl's assailant. Upon approaching the vehicle, one officer observed through an open window items similar to those described by the victim as having been in the automobile in which the attacks occurred. The keys were in the vehicle's ignition. Shortly thereafter, defendant arrived on the scene. After identifying the automobile as his, he agreed to accompany the officers to the Davenport police station. Following questioning, defendant signed a statement prepared with the officers' assistance in which he admitted having perpetrated the attack in the cemetery. He was then placed under arrest and formally charged. Having waived his right to trial by jury, *see* Iowa R.Crim.P. 16, defendant was subsequently convicted of both offenses following trial to the court and sentenced to concurrent terms of twenty-five years and life imprisonment. This appeal followed.

I. *Admissibility of items seized following search of defendant's automobile.* Defendant initially asserts trial court erred in admitting as evidence certain items seized following a warrantless search of his vehicle at the Davenport police station. He claims that because no circumstances existed which would have justified conducting the search without a warrant, it was constitutionally impermissible and suppression of the articles seized was mandated. Because a constitutional challenge is involved, we find the facts de novo. *State v. Olsen*, 293 N.W.2d 216, 217 (Iowa), *cert. denied,* —— U.S. ——, 101 S.Ct. 530, 66 L.Ed.2d 290 (1980).

Following defendant's departure to the police station, other officers arrived to photograph his automobile. The vehicle was subsequently taken to the station, where it was later searched. The State acknowledges the search was conducted without a warrant, but argues it was nevertheless lawful because of the existence of probable cause and exigent circumstances.

While ordinarily a search of private property must be both reasonable and performed pursuant to a property executed warrant, there are certain "jealously and carefully drawn" exceptions where a warrantless search will be deemed lawful. *Arkansas v. Sanders*, 442 U.S. 753, 759, 99 S.Ct. 2586, 2590–91, 61 L.Ed.2d 235, 242 (1979); *State v. Ahern*, 227 N.W.2d 164, 165 (Iowa 1975). Among these is the so-called "automobile exception," which the State contends is applicable here. While not invariably authorizing warrantless vehicle searches, this exception is applicable when probable cause and exigent circumstances exist at the time the car is stopped by police. *Carroll v. United States*, 267 U.S. 132, 153–54, 155–56, 45 S.Ct. 280, 285, 286, 69 L.Ed.2d 543, 551, 552 (1925). Under this rationale, the United States Supreme Court upheld the warrantless search of an automobile conducted after the vehicle had been moved from the scene of the stop to a police station. The Court reasoned that because probable cause and exigent circumstances existed at the scene of the stop and would have made the search permissible at that time, the subsequent warrantless search was also valid. *Chambers v. Maroney*, 399

U.S. 42, 51, 90 S.Ct. 1975, 1981, 26 L.Ed.2d 419, 428 (1970). Moreover, exigent circumstances are necessary only initially; the absence of exigent circumstances at the time of the actual search is irrelevant. *Texas v. White*, 423 U.S. 67, 68, 96 S.Ct. 304, 305, 46 L.Ed.2d 209, 211 (1975) (per curiam). We recently adopted this analysis when interpreting article I, section 8 of the Iowa Constitution in *Olsen*, 293 N.W.2d at 220.

■ Thus, as a matter of both federal and Iowa constitutional law, if the search in this instance could have been made in the absence of a warrant at the time officers initially encountered defendant's vehicle, the automobile could still be searched after it was moved to the station, provided only that probable cause still existed. Hence, the determinative questions to be addressed here are whether probable cause obtained both when police came upon the vehicle and at the time of the subsequent station house search, and whether exigent circumstances existed at the time defendant's automobile was located.

■ The record satisfactorily demonstrates the existence of probable cause both at the time police first came upon defendant's vehicle and when the search took place. The officers had been provided a description of the automobile used by the assailant, which matched defendant's vehicle; discovery of an owner's manual at the scene of the abduction provided further identification of the vehicle involved. These factors adequately establish probable cause in this case.

■ The exigency requirement, as explained in prior cases, is satisfied "when the car is movable, the occupants are alerted, and the car's contents may never be found again if a warrant must be obtained." *Olsen*, 293 N.W.2d at 218 (quoting *Chambers*, 399 U.S. at 51, 90 S.Ct. at 1981, 26 L.Ed.2d at 428). In light of the particular facts of this case, we find that exigent circumstances existed at the time officers initially discovered defendant's automobile. At this point, defendant was not yet present. No suspect was then in custody, and the fact

that the keys to the automobile were in the ignition provided some indication that the owner was probably nearby and had been alerted by the officers' presence. These facts, coupled with the inherent mobility of the vehicle, created a clear likelihood that the car and its contents might never have been located again had the police departed to obtain a warrant. Based upon these circumstances, we find the requirement of exigency adequately demonstrated here. While defendant arrived on the scene shortly after the officers first encountered the automobile, exigent circumstances nonetheless obtained prior to that time.

Thus, because both probable cause and exigent circumstances existed when police initially located defendant's vehicle, a warrantless search of the automobile would have been reasonable at that time. The same probable cause obtained at the police station. Therefore, under applicable principles, the warrantless search at the station house was permissible, and trial court did not err in admitting the fruits of the search.

II. *Admissibility of testimony concerning pretrial identifications of defendant.* Defendant next asserts trial court erred in refusing to suppress testimony by the victim concerning two pretrial identifications. He contends improper out-of-court identification procedures tainted both the out-of-court and in-court identifications which she made, resulting in a denial of due process.

■ Two Polaroid photographs were taken of defendant at the time he was questioned by police. The photographs, having been placed on a desk in the detective bureau, were observed by the victim when she passed through the station after identifying defendant's automobile, which had by that time been impounded. She identified the man in the photos as her assailant. Defendant argues this constituted an impermissibly suggestive identification, asserting that the photographs were intentionally placed atop the desk in order that the victim might view them and identify defendant as the assailant. The State, on the other hand, contends defendant

failed to preserve error with respect to this testimony, and we agree. No suppression motion was made in connection with this pretrial identification; moreover, no objection was interposed at trial when both the photographs themselves and the testimony concerning the out-of-court identification were offered. Under these circumstances, defendant waived any error here. Even constitutional issues cannot be raised for the first time on appeal. *See State v. Paulsen*, 293 N.W.2d 244, 247 (Iowa 1980); *State v. Fowler*, 248 N.W.2d 511, 517 (Iowa 1976).

■ The second challenged pretrial identification was made at a deposition of the victim taken by defendant, at which his presence was required. Initially, defendant argues that requiring his presence at the deposition constituted a violation of his constitutional rights, in that it strengthened the prior photographic identification, which was itself impermissibly suggestive. This argument is without merit. As previously stated in *State v. Davis*, 259 N.W.2d 812, 813 (Iowa 1977), and equally applicable here,

[t]he State is entitled to have the accused present so that the witnesses can look into his face and answer whether he is or is not the man. This must be true whether the identity issue arises at trial or in pretrial depositions for, realistically, testimony given in deposition may be as influential at a subsequent trial as testimony given at the trial itself.

Defendant further asserts the deposition identification involved an impermissibly suggestive police procedure. He alleges the assistant county attorney, immediately prior to the deposition, told the victim that the man who "raped" her would be present, and that this comment tainted the subsequent identification. Testimony elicited by the State with respect to this point differs from defendant's allegation, and the State argues there was no suggestiveness.

■ Our analysis in this context is twofold. We first consider whether an impermissibly suggestive out-of-court identification procedure was employed. *State v. Mark*, 286 N.W.2d 396, 403 (Iowa 1979). "If we find the procedure to be impermissibly suggestive, we must then determine whether, under the totality of the circumstances, the suggestive procedure gave rise to 'a *very substantial likelihood of irreparable misidentification.*'" *Id.* at 403–04 (quoting *Manson v. Braithwaite*, 432 U.S. 98, 116, 97 S.Ct. 2243, 2254, 53 L.Ed.2d 140, 155 (1977)).

■ We need not decide whether the out-of-court identification here involved an impermissibly suggestive procedure, however, because we find the identification to be reliable under the totality of the circumstances; that is, there was not a "very substantial likelihood of irreparable misidentification." The factors to be considered in determining whether an identification was sufficiently reliable include

the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

*Mark*, 286 N.W.2d at 405 (quoting *Neil v. Biggers*, 409 U.S. 188, 199, 93 S.Ct. 375, 382, 34 L.Ed.2d 401, 411 (1972)); *see State v. Hicks*, 277 N.W.2d 889, 891–93 (Iowa 1979); *State v. McManus*, 263 N.W.2d 556, 557–59 (Iowa Ct.App. 1978).

■ We now apply this five-factor analysis to the case at bar. The record indicates the victim spent a considerable amount of time with her assailant, up to two hours. She was in close proximity to him throughout this period. Further, she was no casual, inattentive observer, but rather the victim of a personally humiliating crime. Additionally, trial court noted the consistency between defendant's physical characteristics and the description provided by the victim. She displayed no uncertainty concerning her identification of defendant as her assailant, even under cross-examination. Finally, the deposition identification occurred two months after defendant's arrest, at most. We decline to find this lapse of time sufficient to defeat the reliability of

the victim's identification. *See Biggers,* 409 U.S. at 201, 93 S.Ct. at 383, 34 L.Ed.2d at 412 (lapse of seven months between rape and identification did not defeat identification by victim). Despite her young age, we conclude the victim's pretrial and in-court identifications of defendant were reliable under the totality of the circumstances and properly admitted into evidence.

III. *Admissibility of confession.* Defendant's third contention concerns trial court's refusal to exclude as evidence the confession given to the Davenport police which led to his formal arrest. He argues the signed statement was not made voluntarily, and that it therefore was inadmissible at trial. In support of this argument, defendant points to his low intelligence and to alleged threats and harassment on the part of the police.

Where the validity of a confession is placed in issue, the burden is on the State to prove that the confession was voluntarily, knowingly and intelligently made. *State v. Winfrey,* 221 N.W.2d 269, 271 (Iowa 1974). Voluntariness is determined through consideration of the "totality of the circumstances." *Id.* at 272. From our independent examination of the record, we conclude trial court correctly admitted defendant's confession.

As noted above, defendant's argument under this assignment of error is predicated in part upon his low intelligence. He contends his subnormal mentality, under the circumstances of this case, rendered the confession invalid, because it was not knowingly and voluntarily made. Concerning low intelligence as a factor bearing upon voluntariness, we have stated previously that

a confession will not be excluded on the sole ground the accused is mentally weak. Mental subnormality does not itself deprive the confession of voluntariness or bar its admission in evidence, so long as the subnormality does not deprive the person in question of the capacity to understand the meaning and effect of the confession. Of course subnormality is a factor to be considered in determining

the issues of voluntariness and admissibility.

*Winfrey,* 221 N.W.2d at 273. While a psychiatrist called by the defense testified that defendant is suggestible because of his level of intelligence and had difficulty reading, the psychiatrist also acknowledged that this did not mean defendant is incapable of understanding what is said or read to him. Further, uncontradicted testimony by the police was offered which showed that officers went through the statement with defendant three times prior to the time he actually signed it. Additionally, defendant's ownership of and ability to operate an automobile are also factors indicative of sufficient intelligence to understand events as they take place. *See State v. Holderness,* 191 N.W.2d 642, 645–46 (Iowa 1971). Under these circumstances, defendant's low intelligence alone was not such as to render his confession involuntary.

Defendant's argument is also based upon alleged threats and harassment by officers during the questioning. This contention is supported only by his testimony at trial, and is specifically denied by both officers who were present at the interrogation. The officers' testimony adequately refuted defendant's allegations.

Considering the totality of the circumstances, we find the confession by defendant was knowingly, intelligently and voluntarily made and admissible at trial.

IV. *Whether abduction constituted kidnapping.* Defendant also contends trial court erred in its determination that the abduction here constituted kidnapping. He argues that the statutory definition of kidnapping contemplates "confinement" or "removal" greater than that which is merely incidental to the commission of a separate offense. *See* § 710.1, The Code. Under the facts of this case, defendant asserts, the confinement and removal of the victim were only incidental to the acts of sexual abuse, and therefore the separate offense of kidnapping was not established.

Decisions in other jurisdictions indicate divergent views with respect to the proposi-

tion advanced by defendant. *See generally* Annot., 43 A.L.R.3d 699 (1972). Some courts adhere to the theory that any forcible detention or removal of a victim will generally be sufficient to constitute the separate crime of kidnapping. *See, e.g., Wilson v. State,* 253 Ind. 585, 592, 255 N.E.2d 817, 821–22 (1970); *State v. Morris,* 281 Minn. 119, 121–23, 160 N.W.2d 715, 717–18 (1968). Others subscribe to the position that forcible detention or removal will not alone support a charge of kidnapping; rather, movement which substantially increased the risk of harm to the victim must be demonstrated before kidnapping may be found. *See, e.g., People v. Daniels,* 71 Cal.2d 1119, 1139, 459 P.2d 225, 238, 80 Cal.Rptr. 897, 910 (1969); *People v. Levy,* 15 N.Y.2d 159, 163–66, 204 N.E.2d 842, 843–44, 256 N.Y.S.2d 793, 795–96, *cert. denied,* 381 U.S. 938, 85 S.Ct. 1770, 14 L.Ed.2d 701 (1965).

█ It is this latter view which defendant contends should be adopted by this court. While we have not yet decided this issue, *see State v. Knutson,* 220 N.W.2d 575, 578–79 (Iowa 1974), we also need not reach it in the instant case, because we are convinced that the confinement and removal here was such that it could not be considered merely incidental to the offense of sexual abuse. The victim was transported by automobile a distance several miles, from Davenport out into the countryside. This demonstrates the movement was calculated to detain her in isolation and secret, and was not only a means to facilitate the commission of sexual acts. Moreover, the asportation from the city to the country removed the victim to a more isolated area, thus decreasing the likelihood of any passersby coming upon the scene. The distance over which she was transported, along with the length of the detention (approximately two hours) further bolster our conclusion that the confinement and removal substantially increased the risk of harm to this victim.

We believe the facts and circumstances of this case are sufficient to support the conclusion that the confinement and movement involved were not merely incidental to the crime of sexual abuse, and that the offense of kidnapping was amply established.

█ V. *Propriety of conviction and sentencing on both offenses.* In his final two assignments, defendant asserts trial court erred in convicting and sentencing him on both the charged offenses. This assertion is predicated upon the argument that, under the facts of this case, sexual abuse in the second degree constituted a lesser included offense of kidnapping in the first degree. *See* § 701.9, The Code (merger of lesser included offenses).

In its written findings, trial court, however, carefully delineated the facts which supported the commission of each separate offense. We agree that the facts of this case demonstrate the occurrence of two separate crimes in place and time. As defendant himself points out, one incident of sexual abuse took place at the cemetery, prior to the asportation of the victim. Thereafter, she was transported from that location into the countryside; this confinement and removal, as stated in the preceding division, was sufficient to constitute the offense of kidnapping. During this latter period, the victim was subjected to other incidents of sexual abuse. Under these facts, the sexual abuse which took place at the cemetery constituted a distinct and separate offense from the acts of kidnapping and sexual abuse which subsequently occurred. As such, trial court did not err in convicting and sentencing defendant for both crimes. We therefore need not reach the lesser included offense issue.

No error is presented in this appeal.
AFFIRMED.