# In the Iowa Supreme Court

No. 24–0462

Submitted March 27, 2025—Filed May 2, 2025

**State of Iowa,**

Appellee,

vs.

**Amadeus Demetrius McClain,**

Appellant.

Appeal from the Iowa District Court for Buchanan County, John J. Sullivan, judge.

Defendant appeals from his conditional guilty plea, arguing the district court erred by denying his motion to suppress evidence from a warrantless vehicle search. **Affirmed.**

Waterman, J., delivered the opinion of the court, in which Christensen, C.J., and Mansfield, McDonald, and May, JJ., joined. McDermott, J., filed an opinion concurring in the judgment, in which Oxley, J., joined.

Martha J. Lucey, State Appellate Defender, and Shellie L. Knipfer, Assistant Appellate Defender, for appellant.

Brenna Bird, Attorney General, and Timothy M. Hau, Assistant Attorney General, for appellee.

**Waterman, Justice.**

This case presents our first opportunity to define the "interest of justice" requirement for appellate jurisdiction over an appeal from a conditional guilty plea under Iowa Code section 814.6(3) (2023). The State and district court approved the defendant's conditional guilty plea to drug charges that reserved his right to appeal the ruling denying his motion to suppress evidence from a warrantless search of his backpack in the trunk of a car stopped for speeding. But the State now argues that appellate review is not in the interest of justice because the defendant is raising new and unpreserved arguments on appeal. Specifically, in the district court, the defendant argued that he was subject to an unconstitutional search incident to arrest. Now, and for the first time, on appeal, he argues that the trooper lacked training to identify the odor of marijuana and that our court should overrule precedent retaining the automobile exception to the warrant requirement. He argues that the ability of officers to quickly obtain electronic search warrants undermines the exigency justification for the automobile exception. The State relied on the automobile exception in district court, and the motion to suppress was denied on that ground. We retained the case.

On our review, we conclude that it is in the interest of justice to decide the appeal of the suppression ruling, consistent with the very purpose of conditional guilty pleas approved by the prosecutor and district court. Our review is limited to the suppression ruling. We find error preserved as to the automobile exception but not the challenge to the trooper's training. In *State v. Storm*, we thoroughly reviewed the rationales for the automobile exception and declined to abandon it notwithstanding the then-impending availability of electronic search warrants. 898 N.W.2d 140, 155–56 (Iowa 2017). The defendant asks us to overrule *Storm*;

the State urges that we reaffirm it. Today, electronic search warrants are available throughout Iowa. But the justifications for the exception remain valid, including officer safety during roadside encounters. Abandoning the exception would not advance civil liberties; the State has the burden to prove probable cause justifying the warrantless search. For the reasons explained below, we retain the automobile exception and affirm this defendant's conviction.

## I. Background Facts and Proceedings.

On July 9, 2023, troopers with the Iowa State Patrol (ISP) were assigned to monitor a stretch of Highway 20 in Buchanan County between Waterloo and Winthrop. Taylor Grim piloted an ISP airplane and looked for speeders, particularly vehicles that weave between lanes and overtake several cars at once. He calculated a vehicle's speed by stopwatch timing its travel between white boxes painted in the left lane exactly a quarter mile apart. Grim then radioed the troopers below in ISP patrol cars with the description and speed of the vehicle.

One of the troopers driving a patrol car was Devin Baumgartner, who was in his fourth month on the job. He was accompanied by field training officer Devin Brooks, who rode along as a passenger to ensure Baumgartner followed ISP procedures. For the most part, Brooks merely observed without interacting with the drivers Baumgartner stopped.

At 4:48 p.m., Grim watched a white car traveling westbound that quickly overtook three vehicles. Grim timed the car at several points and determined it was traveling eighty miles per hour—fifteen miles per hour over the posted sixty-five miles per hour speed limit. Grim radioed his observations to the troopers on Highway 20. Baumgartner responded and pursued the car. He caught up to a white Chrysler 200, which Grim confirmed was the correct vehicle. Baumgartner activated his patrol car lights and conducted a traffic stop.

The driver, Corvette Harris, pulled her car off to the right shoulder, and Baumgartner parked ten to fifteen feet behind her. He approached the Chrysler while Brooks remained in the patrol car.

There were three females and one male in the Chrysler. The lone male was Amadeus Demetrius McClain, in the back seat directly behind the driver. Through the passenger window, Baumgartner asked Harris where they were coming from. Harris answered they were returning home from a funeral. Baumgartner asked Harris to provide her driver's license, registration, and proof of insurance. She handed him her driver's license and registration but was unable to locate her insurance information. Baumgartner returned to his patrol car while Harris searched for proof of her insurance.

Baumgartner began drafting a citation for speeding when he noticed that Harris had a temporary restricted license allowing her to drive only with a specific form from the Iowa Department of Transportation (DOT). Baumgartner returned to the Chrysler to ask Harris for that form. Baumgartner this time smelled the odor of marijuana emanating from Harris's vehicle. When later asked why he did not notice that odor the first time he stood by the car, Baumgartner testified,

> My assumption would just be that either the wind picked up or just paused or picked up or moved in a direction where I would be able to smell marijuana or the windows could have rolled up and down in the process of me coming back up which made it so I could smell it.

Baumgartner asked Harris if she had the required DOT form. She did not. He next asked "if there was anything in the vehicle that should not be in the vehicle, specifically marijuana." Harris responded that there had been marijuana in the car at one point, but not now. Baumgartner ordered the occupants to get out and stand in front of his patrol car. Brooks left the patrol car to stand with the occupants.

Baumgartner began searching the Chrysler, starting at the front and working his way to the rear. He found no marijuana in the passenger compartment, so he moved to the trunk. There, he found a large black garbage bag that contained cannabis-infused ramen noodles. Next to the garbage bag, Baumgartner found a JanSport backpack. Baumgartner opened the backpack, which had a pair of men's jeans sitting on top. Baumgartner looked toward McClain, who appeared "visibly nervous, pacing back and forth to the passenger side of [the patrol car]." Baumgartner asked McClain for his name; he answered "Demetrius." Baumgartner continued searching the backpack and found several bags of raw marijuana, loose cash, and a wallet with McClain's Wisconsin identification card.

Brooks approached the trunk to see what was in the backpack. McClain began walking to the rear of the patrol car, nearly entering the highway. Baumgartner ordered McClain to return to the front of the patrol car. Brooks ordered McClain to put his hands on the hood of the patrol car to be searched. McClain did not immediately respond to the request, so Brooks repeated it twice. After the third request, McClain shouted "no" and ran. He started running east, the opposite direction that the cars were moving, before turning south and cutting across all four lanes and the median of Highway 20. Baumgartner pursued McClain on foot. Baumgartner "assisted [McClain] down to the ground on the south ditch of the eastbound lanes" and arrested him. In a subsequent bond reduction hearing, a motive for McClain's flight emerged: he had five outstanding warrants for his arrest in his home state of Wisconsin for felony drug charges and "bail jumping." McClain also had previously been convicted as a felon in possession of a firearm in Wisconsin.

McClain was charged with possession of marijuana with intent to deliver in violation of Iowa Code section 124.401(1)(*d*) and failure to affix a drug tax stamp in violation of Iowa Code section 453B.12. McClain filed a motion to suppress evidence of the marijuana found in the Chrysler. Specifically, he argued that the search of the backpack and garbage bag violated his rights under both the Fourth Amendment to the United States Constitution and article I, section 10 of the Iowa Constitution.

On October 10, the district court conducted an evidentiary hearing on McClain's motion. Troopers Brooks, Grim, and Baumgartner testified for the State. Baumgartner said that electronic search warrants were available to him at the time of the stop, but he chose not to pursue one because he believed he had probable cause to use the automobile exception.

> [Defense Counsel:] Q. And you -- and you made application for search warrants via electronic communication?
>
> [Baumgartner:] A. I have done one with the computer search warrants.
>
> Q. Okay. The response is relatively prompt, is it not?
>
> A. It is fairly simple to fill out one, if that's what you're asking.
>
> Q. Okay. And the magistrate will respond with reasonable promptitude?
>
> A. Yes.
>
> Q. Okay. Particularly if you call ahead usually?
>
> A. Yup.
>
> Q. You didn't do that in this case, did you?
>
> A. I did not.
>
> Q. Okay. Why not?
>
> A. Because I did not need to apply for a search warrant.

McClain called no witnesses. He argued that the search of the Chrysler's trunk did not satisfy the search incident to arrest exception to the warrant requirement under *State v. Gaskins*, 866 N.W.2d 1, 7–14 (Iowa 2015). He did not cite *Storm* or argue it should be overruled. McClain never challenged Baumgartner's qualifications to identify the odor of marijuana. The State argued that the automobile exception justified Baumgartner's search under *Storm* because after he smelled marijuana, he had probable cause to believe marijuana was in the car.

The district court denied McClain's motion to suppress, explaining:

> The Defendant asserts that the trooper should have obtained a search warrant as it is readily available to obtain an electronic search warrant. The trooper chose not to seek a warrant. The trooper testified that Highway Patrol policy reflects that as long as the trooper has probable cause to search the vehicle, the trooper can search without applying for a search warrant.

> The Court also finds that the facts and circumstances would not support the defendant's assertion that seeking a search warrant would be a simple matter. This was a dangerous situation. The 4 occupants were waiting outside with 1 trooper while the other trooper searched. The stop occurred on a busy highway. The defendant's conduct was unpredictable - he was anxiously pacing back and forth during the search and ran from the officer upon repeated requests to search the defendant. Increasing the time needed to prepare, file and wait for the search warrant would increase the danger of this traffic stop.

> While the trooper could have sought a search warrant, under the current state of the law, he was not required to do so. The smell of marijuana provided the trooper probable cause to search the vehicle.

McClain later entered a conditional guilty plea under Iowa Rule of Criminal Procedure 2.8(2)(*b*)(9). His written plea stated, "I enter this plea as a conditional plea under Rule 2, with approval of the State and the Court, to allow me to appeal an unfavorable ruling on my pretrial suppression motion, and if appeal results

in reversal of the ruling then my plea will be withdrawn." Consistent with his plea agreement, McClain was sentenced to an indeterminate sentence of up to five years in prison with his sentence running concurrently with a Wisconsin prison sentence.

McClain filed this appeal seeking reversal of the suppression ruling on two grounds. First, McClain argues that the State failed to establish that Trooper Baumgartner had the necessary training to identify the smell of marijuana. Second, McClain argues that we should abandon the automobile exception to the warrant requirement under article I, section 8 of the Iowa Constitution. McClain contends that the availability of electronic search warrants has undermined the exigency justification such that the inherent mobility of automobiles is no longer sufficient.

In response, the State argues that we lack jurisdiction over this appeal from a conditional guilty plea under a recent amendment to Iowa Code section 814.6. That amendment allows jurisdiction to hear appeals from conditional plea agreements only when "the reserved issue is in the interest of justice." Iowa Code § 814.6(3). The State argues that McClain's appeal is not in the interest of justice because he is raising new, unpreserved arguments on appeal that were not raised in district court. On the merits, the State argues that probable cause was shown by Baumgartner's testimony at the suppression hearing that he smelled the odor of marijuana emanating from the Chrysler. The State further argues that the automobile exception should not be abandoned because the advent of electronic search warrants has not undermined its justifications.

We retained the case.

**II. Standard of Review.**

"The standard of review for a constitutional search and seizure challenge is de novo." *State v. Rincon*, 970 N.W.2d 275, 280 (Iowa 2022) (quoting *State v. Haas*, 930 N.W.2d 699, 702 (Iowa 2019) (per curiam)). "We look to the entire record and 'make an "independent evaluation of the totality of the circumstances." ' " *Storm*, 898 N.W.2d at 144 (quoting *State v. Brown*, 890 N.W.2d 315, 321 (Iowa 2017)). "We give deference to the district court's fact findings due to its opportunity to assess the credibility of the witnesses, but we are not bound by those findings." *Id.* (quoting *Brown*, 890 N.W.2d at 321).

**III. Analysis.**

First, we determine that we have jurisdiction to hear McClain's appeal in the interest of justice. Next, we decline to address McClain's challenge to Baumgartner's ability to identify the odor of marijuana because McClain failed to preserve error on that issue. Finally, we address McClain's invitation to abandon the automobile exception. Because we determine the automobile exception remains supported by the rationales that have historically justified it, we decline his invitation, reaffirm *Storm*, and affirm McClain's conviction.

**A. Whether This Court Has Subject Matter Jurisdiction over McClain's Appeal from His Conditional Guilty Plea.** We have only limited subject matter jurisdiction over direct appeals from guilty pleas. *See* Iowa Code § 814.6; *State v. Rutherford*, 997 N.W.2d 142, 145 (Iowa 2023). Appeals from guilty pleas are allowed "for a class 'A' felony or in a case where the defendant establishes good cause." *See* Iowa Code § 814.6(1)(*a*)(3). In 2023, a new albeit limited avenue for appeal was enacted for "conditional" guilty pleas. As amended, Iowa Rule of Criminal Procedure 2.8(2)(*b*)(9) states:

> With the consent of the court and the prosecuting attorney, a
> defendant may enter a conditional plea of guilty, reserving in writing

the right to have an appellate court review an adverse determination of a specified pretrial motion. A defendant who prevails on appeal may then withdraw the plea.

And the amendment that year to Iowa Code section 814.6 provides:

> A conditional guilty plea that reserves an issue for appeal shall only be entered by the court with the consent of the prosecuting attorney and the defendant or the defendant's counsel. An appellate court shall have jurisdiction over only conditional guilty pleas that comply with this section and *when the appellate adjudication of the reserved issue is in the interest of justice.*

2023 Iowa Acts ch. 98, § 2 (codified at Iowa Code § 814.6(3) (2024)) (emphasis added). We must decide whether an adjudication of McClain's appeal "is in the interest of justice" under section 814.6(3).

The State acknowledges that it agreed to McClain's conditional guilty plea in district court. It also acknowledges that McClain is appealing only the pretrial ruling on the motion to suppress. But the State nevertheless contends that this appeal is not in the interest of justice because McClain's appellate brief relies on new, unpreserved arguments. We emphasize that appeals from conditional guilty pleas are limited to the specific ruling reserved in the conditional plea agreement joined by the State and approved by the district court. Generally, after the State agrees to the conditional plea in district court, it should not be contesting jurisdiction on appeal. The State's appellate brief aptly acknowledges,

> Under ordinary circumstances, the State might not dispute appellate jurisdiction because the parties stipulated in the district court that the suppression issue would be reserved for appeal. And it would ordinarily be unfair for the State to argue against the terms of the plea agreement on appeal; something a reviewing court could potentially view as an impermissible attempt to deprive the defendant of the benefit of the parties' bargain.

(Citation omitted.) We agree.

The very purpose of conditional pleas is to allow defendants the benefit of their bargain: the right to appeal a specific issue and withdraw the guilty plea if

the ruling is reversed, avoiding the time and expense of a trial for both sides if the challenged ruling is affirmed. The State contends McClain is raising new arguments on appeal with respect to the motion to suppress, but we conclude that those matters can be addressed under our normal rules of error preservation. McClain's appeal should proceed.

**B. Whether the State Was Required to Show Baumgartner's Training and Skills to Identify the Odor of Marijuana.** McClain on appeal argues that the State needed to present evidence "on Baumgartner's experience, qualifications, or training in identifying marijuana by smell" to show probable cause. The State argues that "[a]t no point below did McClain challenge Trooper Baumgartner's ability to detect the odor of marijuana." We agree with the State that McClain failed to preserve error on this issue.

"It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal." *State v. Hanes*, 981 N.W.2d 454, 460 (Iowa 2022) (quoting *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002)). "Litigants may not raise issues—including constitutional issues—for the first time in an appeal." *State v. Tucker*, 982 N.W.2d 645, 653 (Iowa 2022). "A supreme court is 'a court of review, not of first view.'" *Hanes*, 981 N.W.2d at 460 (quoting *Ripperger v. Iowa Pub. Info. Bd.*, 967 N.W.2d 540, 552 (Iowa 2021)).

McClain did not raise this issue in his written motion to suppress filed in district court. At no point during the suppression hearing did he challenge Trooper Baumgartner's qualifications to identify the odor of marijuana. Because McClain failed to preserve error, we do not reach this issue.

**C. Whether the Automobile Exception Should Be Abandoned.** Finally, McClain argues "that Iowa should no longer allow a *per se* automobile exception

to the warrant requirement." As noted above, McClain adequately preserved error on this issue. Because we believe the justifications underpinning the automobile exception continue to exist, we decline McClain's invitation to abandon it.

Both the Iowa Constitution and the United States Constitution protect against "unreasonable searches and seizures." *See* U.S. Const. amend. IV; Iowa Const. art. I, § 8. "Our cases provide that '[s]earches conducted without a warrant are per se unreasonable, "subject only to a few specifically established and well-delineated exceptions." ' " *Rincon*, 970 N.W.2d at 280 (alteration in original) (quoting *State v. Watts*, 801 N.W.2d 845, 850 (Iowa 2011)). One of those well-delineated exceptions is the automobile exception. "[T]his exception is applicable when probable cause and exigent circumstances exist at the time the car is stopped by police." *Storm*, 898 N.W.2d at 145 (alteration in original) (quoting *State v. Holderness*, 301 N.W.2d 733, 736 (Iowa 1981)). "The inherent mobility of motor vehicles satisfies the exigent-circumstances requirement." *Id.* (quoting *Holderness*, 301 N.W.2d at 736).

"The automobile exception allows law enforcement to search a vehicle without a warrant if there is probable cause to believe it contains contraband." *Rincon*, 970 N.W.2d at 280. The exception is justified by a pair of twin rationales: "(1) the inherent mobility of the vehicle, and (2) the lower expectation of privacy in vehicles compared to homes and other structures." *Storm*, 898 N.W.2d at 145. McClain argues that the advent of electronic search warrants has undermined the automobile exception such that it no longer serves its purposes. Accordingly, he argues that we should abandon the automobile exception and require a separate exigency showing beyond the inherent mobility of automobiles to justify a warrantless search.

This is not the first time we have been asked to abandon the automobile exception in light of electronic search warrants. Only seven years ago in *Storm*, we thoroughly considered whether to abandon the exception. *See* 898 N.W.2d at 148–156. There, Deputy Clay Leonard saw the driver of a Chevrolet pickup driving without his seat belt. *Id.* at 142. Leonard initiated a traffic stop, and the driver, Christopher Storm, pulled the Chevrolet to the side of the road. *Id.* Immediately upon approaching the truck, Leonard "could smell the distinct odor of marijuana coming from the vehicle." *Id.* "Storm initially denied smoking marijuana or having any in his truck, but after further discussion, he admitted to using marijuana previously and having a criminal record." *Id.* Leonard searched Storm's truck and found "several packages of marijuana, a scale, a grinder, a pipe, an e-cigarette with residue, and pills in an unmarked bottle." *Id.* Storm moved to suppress, arguing that "a warrantless search of a vehicle based solely upon probable cause no longer comports with article I, section 8 of the Iowa Constitution because new technology enables officers to file warrant applications at the scene of the traffic stop." *Id.*

We rejected Storm's argument for several reasons. First, we pointed to the long and continuous history of the automobile exception. *See id.* at 145–47. It was first recognized by the United States Supreme Court in 1925 in *Carroll v. United States*, 267 U.S. 132, 153–54 (1925). *Storm*, 898 N.W.2d at 145. Since then, the Supreme Court has continuously upheld the automobile exception. *See, e.g., California v. Carney*, 471 U.S. 386, 393–94 (1985) (applying the automobile exception based upon "a reduced expectation of privacy stemming from its use as a licensed motor vehicle subject to a range of police regulation inapplicable to a fixed dwelling"); *Chambers v. Maroney*, 399 U.S. 42, 52 (1970) (identifying the exigency presented by the mobility of automobiles saying that

"there is little to choose in terms of practical consequences between an immediate search without a warrant and the car's immobilization until a warrant is obtained"). These cases rested on a pair of twin rationales: "(1) the inherent mobility of the vehicle, and (2) the lower expectation of privacy in vehicles compared to homes and other structures." *Storm*, 898 N.W.2d at 145. We determined both rationales remained valid. *See id.*

We relied on stare decisis. *Id.* at 148. We noted that we first adopted the automobile exception in 1980 in *State v. Olsen*, 293 N.W.2d 216, 220 (Iowa 1980). *Storm*, 898 N.W.2d at 148. Since then, we continued following the federal automobile exception for decades. *Id.* (collecting cases). In *Storm*, we said, "[s]tare decisis alone dictates continued adherence to our precedent absent a compelling reason to change the law." *Id.* (quoting *Book v. Doublestar Dongfeng Tyre Co.*, 860 N.W.2d 576, 594 (Iowa 2015)). We found Storm provided no compelling reason to overturn well-settled precedent. *Id.*

Second, we noted that the overwhelming majority of states have retained the automobile exception. *Id.* at 148–49, n.4 (collecting cases). As of 2017, all but five states retained the automobile exception. *Id.* at 148. Importantly, five other states had previously abandoned the automobile exception before changing course and restoring it. *See id.* at 150. We concluded, "We can learn from the experiences of the five states previously requiring a separate showing of exigent circumstances that restored the automobile exception." *Id.* We noted that those courts recognized the resulting confusion and practical problems justified restoring the exception. *Id.* at 150–52.

Third, we found that technological advances had not undermined the validity of the automobile exception. *See id.* at 153. In fact, we identified potential

difficulties that might come from requiring law enforcement to accurately draft a search warrant application during a traffic stop. *Id.* at 155.

> At this point, forcing an officer to draft a search warrant application while multitasking on the side of the road may jeopardize the accuracy of the warrant application and would require motorists to be detained for much longer periods. On the civil liberties side of the ledger, we perceive no meaningful net benefit to motorists being subjected to longer seizures. Our court has indeed expressed a preference for warrants. But the purposes for requiring warrants are not furthered here.

*Id.* (citation omitted). We also recognized that improved electronic communications "will also pose its own difficulties for officers in roadside stops" because "new technology allows for quicker communication between coconspirators." *Id.* But we "left open the possibility that in future cases technological advances could undermine the automobile exception for all cases or obviate its application in an individual case." *Id.* at 154.

Finally, we favored retaining the bright-line rule created by the automobile exception. *Id.* at 156. We determined the automobile exception was preferable to totality-of-the-circumstances test for exigency:

> The automobile exception is easy to apply, unlike its alternative—an amorphous, multifactor exigent-circumstances test. We generally "prefer the clarity of bright-line rules in time-sensitive interactions between citizens and law enforcement." Bright-line rules are "especially beneficial" when officers "have to make . . . quick decisions as to what the law requires where the stakes are high, involving public safety on one side of the ledger and individual rights on the other." The ad hoc exigency approach is the antithesis of a bright-line rule.

*Id.* (omission in original) (first quoting *State v. Hellstern*, 856 N.W.2d 355, 364 (Iowa 2014); and then quoting *Welch v. Iowa Dep't of Transp.*, 801 N.W.2d 590, 601 (Iowa 2011)). Yet we also acknowledged that "[w]e may revisit this issue at a future time when roadside electronic warrants have become more practical." *Id.* at 142. In a specially concurring opinion, Chief Justice Cady opined that the

"automobile exception has a limited lifespan, [and] its longevity will depend on the ability and pace of this state in integrating and using technological advances in a way that renders a categorical rule unreasonable." *Id.* at 157 (Cady, C.J., concurring specially).

Three justices dissented, arguing that the recent technological advancements allowing for electronic search warrants undermined the purposes of the automobile exception:

> Technological advances now make it reasonably practicable to apply for a warrant from the scene of a traffic stop, at least in some circumstances. Law enforcement officers equipped with laptops and smart phones can and do access the internet from their patrol cars. Using laptops or smartphones, law enforcement officers can establish an audiovisual connection with a magistrate for remote administration of the oath or affirmation. These technologies are widely available and accessible to most officers. Where it is reasonably practicable to use such technologies in applying for search warrants during traffic stops, we should require their use.

*Id.* at 168 (Hecht, J., dissenting) (footnote omitted); *see also id.* at 175–77 (Appel, J., dissenting).

Electronic search warrants today are more readily available and, in fact, were accessible by the troopers in this case. According to Trooper Baumgartner, these warrants are "fairly simple to fill out." Additionally, Baumgartner agreed that judicial officers respond "with reasonable promptitude." But we are not persuaded to replace the automobile exception and require warrants or independent proof of exigency under the totality of circumstances. Our holding is based on *Storm* as well as several additional reasons.

First, we reiterate that "[s]tare decisis alone dictates continued adherence to our precedent absent a compelling reason to change the law." *Id.* at 148 (majority opinion) (quoting *Book*, 860 N.W.2d at 594). "A compelling reason requires 'the highest possible showing that a precedent should be overruled' and

'that the precedent is clearly erroneous.' " *State v. Brown*, 16 N.W.3d 288, 293 (Iowa 2025) (quoting *Brewer-Strong v. HNI Corp.*, 913 N.W.2d 235, 249 (Iowa 2018)). We first recognized the automobile exception under the Iowa Constitution forty-five years ago in *Olsen*, 293 N.W.2d at 220. Since then, we have repeatedly used and relied on the exception to justify warrantless searches conducted by law enforcement during traffic stops. *See, e.g.*, *State v. Allensworth*, 748 N.W.2d 789, 797 (Iowa 2008) (applying the automobile exception to permit a warrantless search of a vehicle); *State v. Eubanks*, 355 N.W.2d 57, 59 (Iowa 1984) ("It is well established that a police officer may search an automobile without a warrant when probable cause and exigent circumstances exist."); *Holderness*, 301 N.W.2d at 736 (recognizing the automobile exception to the general warrant requirement). And we recently reaffirmed *Storm* to uphold the warrantless search of a passenger's backpack under the automobile exception, rejecting challenges under the state and federal constitutions, and noting that electronic search warrants were not yet widely available. *Rincon*, 970 N.W.2d at 280–81, 285–86. Trooper Baumgartner testified that he was trained on the automobile exception and that it is a tool he relies on. We do not believe the existence of electronic search warrants, by itself, constitutes a compelling reason to overrule forty-five years' worth of precedent.

Second, the twin rationales underpinning the automobile exception continue to support its application. The first rationale, the "inherent mobility of the vehicle," has not been undermined by electronic search warrants. *Storm*, 898 N.W.2d at 145. "Given the nature of an automobile in transit, the Court recognized that an immediate intrusion is necessary" where probable cause exists. *United States v. Ross*, 456 U.S. 798, 806–07 (1982). If we required law enforcement to obtain a warrant before searching a vehicle, then traffic stops

would be prolonged. Why require an officer to accurately complete a warrant application while controlling the scene and ensuring the suspect does not flee or destroy evidence? Indeed, McClain attempted to flee by running across four lanes of Highway 20. The automobile exception alleviates such concerns by permitting law enforcement to more quickly search the vehicle.

The second justification, "the lower expectation of privacy in vehicles compared to homes and other structures," also has not changed. *Storm*, 898 N.W.2d at 145. The United States Supreme Court explained that the "reduced expectations of privacy derive not from the fact that the area to be searched is in plain view, but from the pervasive regulation of vehicles capable of traveling on the public highways." *Carney*, 471 U.S. at 392.

> Automobiles, unlike homes, are subjected to pervasive and continuing governmental regulation and controls, including periodic inspection and licensing requirements. As an everyday occurrence, police stop and examine vehicles when license plates or inspection stickers have expired, or if other violations, such as exhaust fumes or excessive noise, are noted, or if headlights or other safety equipment are not in proper working order.

*Id.* (quoting *South Dakota v. Opperman*, 428 U.S. 364, 368 (1976)). Today, motor vehicles remain heavily regulated, reducing the privacy expectations held by drivers and passengers alike. *See generally State v. Brown*, 930 N.W.2d 840, 856 (Iowa 2019) (collecting statutes regulating vehicles). Law enforcement can stop vehicles for a variety of reasons, including, as in this case, speeding at eighty miles per hour in a sixty-five miles per hour zone.

Additionally, "because of the frequency with which a vehicle can become disabled or involved in an accident on public highways, the extent of police–citizen contact involving automobiles will be substantially greater than police–citizen contact in a home or office." *Storm*, 898 N.W.2d at 147 (quoting

*Cady v. Dombrowski*, 413 U.S. 433, 441 (1973)). The existence of electronic search warrants does not alter this reality. *See Brown*, 930 N.W.2d at 856.

Third, eliminating the automobile exception would put officers at risk while electronic search warrants are sought. "Prolonged encounters along the shoulder of the highway pose[] [an] 'unacceptable risk of serious bodily injury and death.' " *Storm*, 898 N.W.2d at 151 (quoting *State v. Witt*, 126 A.3d 850, 853 (N.J. 2015)). Additionally, officers are at times outnumbered during traffic stops. A lone officer may be conducting a traffic stop of a vehicle with multiple passengers. The district court aptly noted these concerns here:

> This was a dangerous situation. The 4 occupants were waiting outside with 1 trooper while the other trooper searched. The stop occurred on a busy highway. The defendant's conduct was unpredictable - he was anxiously pacing back and forth during the search and ran from the officer upon repeated requests to search the defendant. Increasing the time needed to prepare, file and wait for the search warrant would increase the danger of this traffic stop.

In *Mitchell v. Wisconsin*, the United States Supreme Court observed that "with better technology, the time required [to obtain a search warrant] has shrunk, but it has not disappeared," and "forcing police to put off other tasks for even a relatively short period of time may have terrible collateral costs." 588 U.S. 840, 857 (2019) (plurality opinion). We agree. Indeed, the facts of this case show the challenges officers can face in these roadside encounters. The four occupants exiting the Chrysler outnumbered the troopers, and McClain fled on foot before the pursuing trooper physically subdued him on the far side of the busy four-lane divided highway.

When we decided *Storm* in 2017, the federal courts and all but five states recognized the automobile exception. *See Storm*, 898 N.W.2d at 148–49, 148 n.4 (collecting cases). Since then, only two other states have abandoned the automobile exception: Oregon and Pennsylvania. *See State v. McCarthy*,

501 P.3d 478, 506 (Or. 2021) (overruling precedent that established per se exigency rule under state constitution in 1986 to now require the state to "prove that it could not obtain a warrant through reasonable steps, which include utilizing available processes for electronic warrants"); *Commonwealth v. Alexander*, 243 A.3d 177, 181 (Pa. 2020) (overturning long-established precedent under state constitution to require both probable cause and exigency for warrantless vehicle search). *Commonwealth v. Alexander* was decided by a four-to-three vote; we find the three dissenting opinions more persuasive. *See Alexander*, 243 A.3d at 211 (Saylor, C.J., dissenting) (arguing that by expanding the state's exclusionary rule long aligned with federal precedent, the majority "left the Court vulnerable to criticisms of revisionism and diminished legitimacy" (quoting *Commonwealth v. Arter*, 151 A.3d 149, 169 (Pa. 2016) (Saylor, C.J., dissenting))); *id.* at 215 (Dougherty, J., dissenting) (criticizing majority for departing from stare decisis to overrule "well reasoned" state precedent that "has caused no serious practical problems"); *id.* at 218 (Mundy, J., dissenting) (criticizing majority for abandoning "a bright-line rule" that had long guided police "oftentimes in fast-moving and imprecise scenarios").

Forty-two states and the federal courts continue to allow warrantless automobile searches based on probable cause notwithstanding the increased availability of rapid electronic search warrants. *See, e.g., State v. Baker*, 246 N.E.3d 1236, 1242, 1249 (Ind. Ct. App. 2024) (reversing ruling granting suppression under state constitution over dissent relying on availability of electronic search warrants). In *Storm,* we were persuaded by "the overwhelming weight of authorities" from other states. 898 N.W.2d at 149 (quoting *State v. Rocha*, 890 N.W.2d 178, 207 (Neb. 2017)). That remains true today.

For these reasons and the reasons further elaborated in *Storm*, we decline to abandon the automobile exception.

**IV. Disposition.**

We affirm the district court's ruling denying McClain's motion to suppress.

**Affirmed.**

Christensen, C.J., and Mansfield, McDonald, and May, JJ., join this opinion. McDermott, J., files an opinion concurring in the judgment, in which Oxley, J., joins.

**McDermott, Justice (concurring in the judgment).**

I respectfully concur in the result. Although I agree that the automobile exception remains necessary in Iowa, I have reservations about the way in which the majority embraces it, almost as a "now and forever" exception, despite the ongoing erosion of its primary justification.

Under article I, section 8 of the Iowa Constitution, before a state official may search or seize "persons, houses, papers, or effects," the official must first obtain a warrant. Warrants must be based on probable cause, supported by an oath or affirmation, and specifically describe the place to be searched and the items or persons to be seized. Iowa Const. art. I, § 8; *see also State v. Bracy*, 971 N.W.2d 563, 567–68 (Iowa 2022).

The warrant requirement and probable cause standard were borne out of a common law practice that prevented ordinary officers from personally adjudicating the justification for a search. Thomas Y. Davies, *Recovering the Original Fourth Amendment*, 98 Mich. L. Rev. 547, 576 (1999). The warrant requirement places the determination of probable cause in the hands of "a neutral and detached magistrate" and not "the officer engaged in the often competitive enterprise of ferreting out crime." *Johnson v. United States*, 333 U.S. 10, 13–14 (1948) (Jackson, J.). Over time, courts recognized several exceptional circumstances that justify dispensing with the warrant requirement when the needs of law enforcement are said to override the right to privacy. These exceptional circumstances include, as relevant here, emergencies that give police no time to obtain a warrant. *State v. Abu Youm*, 988 N.W.2d 713, 721 (Iowa 2023).

The automobile exception denotes one such exigency because an automobile is—as its name suggests—mobile. *State v. Allensworth*, 748 N.W.2d 789, 797 (Iowa 2008). Until recently, a law enforcement officer seeking a search warrant completed a paper application and then had to travel to a judge to present the application. The judge would review the application and, if probable cause had been shown, issue the warrant. Traveling to see a judge to review and sign a warrant—to say nothing of the time necessary for the officer to prepare the paper application itself—was time-consuming.

In light of this process, the problem in getting a warrant for an automobile search becomes obvious. Once an officer left the stopped car to present a warrant application to a judge, a driver could simply drive away. *See Carroll v. United States*, 267 U.S. 132, 146–47 (1925). The automobile exception thus allowed law enforcement to search an automobile without a warrant if they had probable cause to believe that the automobile contained contraband or evidence of a crime. *State v. Olsen*, 293 N.W.2d 216, 220 (Iowa 1980) (McCormick, J.).

But innovations in our search warrant procedures have drastically reduced the time necessary to obtain a warrant. Today, we have electronic search warrants. An officer may now apply for a search warrant by electronically submitting an application to a judicial officer from an internet-connected device, such as a laptop within the officer's vehicle. The judicial officer, using a similarly connected device, may review the application, administer the oath telephonically, and issue the warrant electronically. The officer can then print the warrant on-site and proceed with its execution. What might have taken hours now typically takes a handful of minutes.

But although the rise of electronic search warrants chips away at the problem primarily underpinning the automobile exception, use of electronic

search warrants is not yet sufficiently established throughout the state for us to scrap the exception. When use of electronic search warrants becomes ubiquitous throughout the state, the exceptional circumstance justifying the automobile exception will fall away. And when that happens, I see no reason for holding onto the exception. Exceptions to the warrant requirement are not rules of convenience but rather rules of necessity. *See Thornton v. United States*, 541 U.S. 615, 627 (2004) (Scalia, J., concurring). When the necessity ceases to exist, so should the exception.

I would have simply declined the defendant's invitation to overrule *State v. Storm*, 898 N.W.2d 140, 154 (Iowa 2017), and left it at that. In *Storm*, we upheld the continuing need for the automobile exception but "left open the possibility that in future cases technological advances could undermine the automobile exception for all cases or obviate its application in an individual case." *Id.* When that happens, we should not hesitate to abolish the exception and return to what the state and federal constitutions mandate.

Oxley, J., joins this opinion concurring in the judgment.